1  FERNANDO L. AENLLE-ROCHA (SBN 129515)
   RACHEL J. FELDMAN (SBN 246394)
2  J. JONATHAN HAWK (SBN 254350)
   WHITE & CASE LLP
3  633 W. Fifth Street, Suite 1900
   Los Angeles, CA  90071-2007
4  Telephone: (213) 620-7700
   Facsimile:  (213) 452-2329
5  Email:  faenlle-rocha@whitecase.com
   Email:  rfeldman@whitecase.com
6  Email:  jhawk@whitecase.com

7  GLENN M. KURTZ (*PRO HAC VICE PENDING*)
   KIM HAVIV (*PRO HAC VICE PENDING*)
8  WHITE & CASE LLP
   1155 Avenue of the Americas
9  New York, NY 10036-2787
   Telephone: (212) 819-8200
10 Facsimile:  (212) 354-8113
   Email:  gkurtz@whitecase.com
11 Email:  khaviv@whitecase.com

12 Attorneys for Defendant
   HEARTLAND AUTOMOTIVE SERVICES, INC.
13
                    **UNITED STATES DISTRICT COURT**
14
                    **SOUTHERN DISTRICT OF CALIFORNIA**
15

| 16 | In re: JIFFY LUBE INTERNATIONAL, INC., TEXT SPAM LITIGATION | CASE NO. 3:11-MD-02261-JM-JMA |
|---|---|---|
| 17 | This filing relates to: | MDL No. 2261 |
| 18 | LAWRENCE CUSHNIE, individually and on behalf of all others similarly situated, | Assigned to the Hon. Jeffrey T. Miller |
| 19 |  | **DEFENDANT HEARTLAND AUTOMOTIVE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| 20 | Plaintiff, |  |
| 21 | v. |  |
| 22 | TEXTMARKS, INC., a California corporation; AND HEARTLAND AUTOMOTIVE SERVICE, INC., a Minnesota corporation, | **[Notice of Motion and Motion; and Declarations of Jeff Mehmood and Fernando L. Aenlle-Rocha Filed Concurrently Herewith]** |
| 23 |  |  |
| 24 | Defendants. |  |
| 25 |  | Date:  December 12, 2011<br>Time:  10:00 a.m.<br>Place: Courtroom 4 |
| 26 |  |  |
| 27 |  | Complaint Filed: May 3, 2011<br>Trial Date:          None Set |
| 28 |  |  |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................... 1

II. Factual background ...................................................................................... 1

    A. Plaintiff's Transaction at Jiffy Lube Service Center No. 2051 ....................... 2

    B. The Arbitration Agreement ............................................................................. 3

    C. Procedural History, Plaintiff's Claim and Refusal to Arbitrate ...................... 4

III. Argument ...................................................................................................... 6

    A. Plaintiff Consented to a Valid Arbitration Agreement ................................... 7

    B. The Arbitration Agreement Encompasses Plaintiff's Claims ......................... 9

    C. The Invoice Involves Interstate Commerce .................................................. 11

    D. The Arbitration Agreement's Class Action Waiver Is Enforceable.............. 12

    E. The Court Must Stay This Action If It Orders Arbitration ........................... 12

IV. Conclusion .................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alexander v. Anthony Int'l L.P.*,
    341 F.3d 256 (3rd Cir. 2003) .................................................................................................. 13

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) ............................................................................................................ 6, 7, 11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. __, 131 S. Ct. 1740, 2011 WL 1561956 (April 27, 2011) ...................................... 12

*AT&T Techs, Inc. v. Comm. Workers of Am*,
    475 U.S. 643 (1986) ........................................................................................................ 7, 10, 11

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) .................................................................................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ............................................................................................ 6, 7, 10

*French v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    784 F.2d 902 (9th Cir. 1986) .................................................................................................... 7

*Hall Street Assoc., LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008) .................................................................................................................. 6

*In re Korean Air Lines Co., Ltd., Anti-Trust Litigation*,
    642 F.3d 685 (9th Cir. 2011) .................................................................................................... 7

*Meyer v. Holley*,
    537 U.S. 280 (2003) ................................................................................................................ 10

*Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................................... 6, 7, 10

*Murphy v. DIRECTV, Inc.*,
    2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) ............................................................................ 12

*Reinsche v. Cingular Wireless, LLC*,
    2006 WL 3827477 (W.D. Wash. 2006) .................................................................................... 8

*Saincome v, Truly Nolen of Am. Inc.*,
    S.D. Cal. Case No. 3:11-cv-88025 (Aug. 3, 2011) ................................................................ 7-9

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ...................................................................................................................... 9

*Tracer Research Corp. v. National Environ. Servs. Co.*,
  42 F.3d 1292 (9th Cir. 1994) .................................................................................. 10

*United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*,
  363 U.S. 574 (1960) ................................................................................................ 7

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ................................................................................................ 7

**CALIFORNIA STATE CASES**

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) .......................................................................................... 12

*Gentry v. Superior Court*,
  42 Cal. 4th 443 (2007) ............................................................................................ 8

*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
  89 Cal. App. 4th 1042 (Ct. App. Cal. 2001) ........................................................... 8

**WASHINGTON STATE CASES**

*Saluteen-Maschersky v. Countrywide Funding Corp.*,
  105 Wash. App. 846 (Ct. App. Wash. 2001) .......................................................... 8

*Tjart v. Smith Barney, Inc.*,
  107 Wash. App. 885 (Ct. App. Wash. 2001) ....................................................... 7, 8

**FEDERAL STATUTES**

9 U.S.C. § 1, *et seq.* ...................................................................................... 6, 7, 11-13

47 U.S.C. § 227, *et. seq* ......................................................................................... 5

**ADMINISTRATIVE AGENCY MATERIALS**

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, CG Docket No. 02-278, 7 FCC Rcd 8752 (September 17, 1992)) .................................................................................................................. 11

*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, 7 FCC Rcd 232 (December 28, 2007) .................................................................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Heartland Automotive Services, Inc. ("Heartland"), doing business as Jiffy Lube®, operates hundreds of Jiffy Lube® Service Centers throughout the United States. Plaintiff Lawrence Cushnie ("Plaintiff") visited one such Service Center in Seattle, Washington, on December 14, 2010, obtained an oil change from that franchised location and, at the conclusion of his service, signed an invoice presented to him, thereby agreeing to certain terms and conditions governing his relationship with Heartland. One of the terms and conditions Plaintiff assented to was an arbitration agreement requiring that "**all disputes, controversies or claims between Jiffy Lube® and [Plaintiff] (including breach of warrant, contract, tort, or any other claim) will be resolved by mandatory arbitration**." (Emphasis in original). The arbitration agreement also provides that Plaintiff "waive[s] any right to a jury trial" and prohibits him from bringing any action or proceeding as a class representative or participating in one as a class member.

In spite of the aforementioned arbitration agreement, Plaintiff filed a putative class action lawsuit against Heartland on May 3, 2011, in the United States District Court for the Western District of Washington. Plaintiff's complaint alleges that Heartland is responsible for Plaintiff and "thousands" of other people receiving a text message in April 2011, advertising a discounted oil change for customers. That complaint, which has been consolidated in this Court along with five other putative class actions making similar allegations, asserts one claim for violation of the Telephone Consumer Protection Act of 1991, 47 US.C. § 227, *et seq.* (the "TCPA").

Plaintiff now refuses to submit to individual arbitration with Heartland on his TCPA claim despite his unequivocal agreement to do so and the Federal Arbitration Act's ("FAA") broad policy favoring arbitration and the enforcement of such agreements among private parties. Accordingly, Heartland moves this Court to compel Plaintiff to submit to individual arbitration on his claim as required by his agreement with Heartland and stay his action pending the conclusion of that proceeding.

## II.   FACTUAL BACKGROUND

Heartland, dba Jiffy Lube®, is a franchisee of approximately 450 Jiffy Lube® Service

Centers in North America, providing its "guests," *i.e.* customers, automotive lubrication and preventative fluid maintenance, including oil and oil filter inspections and changes. Declaration of Jeff Mehmood ("Mehmood Decl."), ¶ 6. Relevant here, one such Service Center, operating under the licensed trade name Jiffy Lube®, is located at 251 N.E. 45th Street in Seattle, Washington 98105 ("Store No. 2051" or "Store"). *Id.*, ¶¶ 8-9, Ex A at 1 and 5-8. Plaintiff is a resident and citizen of the state of Washington. Master Consolidated Compl. ("Consolidated Compl."), ¶ 6.

### A. Plaintiff's Transaction at Jiffy Lube Service Center No. 2051

On December 14, 2010, Plaintiff brought a 1999 Honda Civic to Store No. 2051. Mehmood Decl., ¶¶ 7-9, 18-19, Ex. B at 1. Employees at that location performed a number of "quick lube" services on the car, including a "Signature" oil change. Mehmood Decl., ¶¶ 18-19, Ex. B at 1. After the services to the Civic were complete, but before Plaintiff paid for them and left Store No. 2051, Store employees provided him a single-page, double-sided invoice (the "Invoice"). *Id.*, ¶¶ 14-19, Ex. B.

The front page of the Invoice sets forth the details of Plaintiff's December 14 transaction with Heartland, including the franchised location that provided the services:

>  Jiffy Lube # 2051
>  Oil Express Inc
>  251 N.E. 45th Street
>  Seattle, WA 98105
>  (206) 632-4120

*Id.*, ¶¶ 14, 18-19, Ex. B at 1. It sets forth Plaintiff's "Guest Information," *i.e.* contact information, as obtained from Plaintiff. *Id.*, ¶¶ 10-12, 14, 18-19, Ex. B at 1. It further contains the "Vehicle Information" (the year, make and model of the car Plaintiff brought in), "Service Checklist" and "Description" (the "quick lube" services performed on the Civic), and price charged to Plaintiff for the services rendered ($30.65). *Id.*, ¶¶ 14, 18-19, Ex. B at 1. Upon receipt of the Invoice, Plaintiff paid, signed the front page of the Invoice in the area marked "AUTHORIZED & RECEIVED BY" and returned it to the Store's employees before leaving. *Id.*, ¶¶ 15, 18-19, Ex. B at 1 (emphasis in original).

2

LOSANGELES 914421 (2K)         MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                               MOTION TO COMPEL ARBITRATION; 3:11-MD-02261-JM-JMA

Notably, the Invoice states in bolded typeface immediately above Plaintiff's signature, that "**Guest agrees to the Terms & Conditions on the back of this invoice.**"  Mehmood Decl., ¶ 18, Ex. B at 1 (emphasis in original).

### B.  The Arbitration Agreement

The back page of the Invoice is titled:

Terms and Conditions
Limited Warranty Certificate / Arbitration Agreement

THE JIFFY LUBE® PLEDGE OF SATISFACTION

Mehmood Decl., ¶¶ 18-19, Ex. B at 2 (emphasis in original).  Below the title, the back page sets forth eight paragraphs of terms and conditions, including a mandatory arbitration provision prohibiting class action lawsuits and class arbitrations (the "Arbitration Agreement").  The Arbitration Agreement provides, in relevant part:

> <u>MANDATORY ARBITRATION/SUBROGATION AND CLASS ACTION WAIVERS</u>.  **Jiffy Lube® and you agree that any and all disputes, controversies or claims between Jiffy Lube® and you (including breach of warrant, contract, tort, or any other claim) will be resolved by mandatory arbitration according to the terms of this Mandatory Arbitration Agreement ("Agreement"), except that any such dispute can be resolved by a small claims court if and for so long as the dispute is within its jurisdiction.  By this agreement, Jiffy Lube® and you also agree to only bring disputes against each other in an individual capacity and not as a class representative or class member and waive any right to a jury trial.**  If this class action waiver is determined to be unenforceable, then any such dispute will be resolved by a court and not by class arbitration.  **You may reject this Agreement by mailing a rejection notice to Jiffy Lube® within 15 days after the invoice date that contains your name, address and phone number.**  Disputes must be submitted to final, binding arbitration by any nationally or locally recognized forum that does not have a policy inconsistent with this Agreement.
>
> * * *
>
> This Agreement relates to a transaction involving interstate commerce and will be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-18.

*Id.*, Ex. B at 2. (emphasis in original).

The Arbitration Agreement further provides Plaintiff several rights to make the individual arbitration process more flexible and less costly for him, including agreements that any arbitration will take place near Plaintiff and that Heartland will pay all filing and arbitrator fees:

> Each party will have a reasonable opportunity to participate in arbitrator selection. Jiffy Lube® will pay all filing and arbitrator fees. Any arbitration hearing will take place at a location near your residence. Either party may request that the arbitrator, in his sole discretion, expand the scope of discovery to include non-privileged information that is relevant and not otherwise obtainable under the applicable arbitration rules.

Mehmood Decl., ¶¶ 18-19, Ex. B at 2.

Importantly, the Arbitration Agreement preserves Plaintiff's right to have his claims decided by a court of law. The Arbitration Agreement provides that Plaintiff can, in lieu of arbitration, choose to bring an action in "**small claims court if and for so long as the dispute is within its jurisdiction**." Mehmood Decl., ¶¶ 18-19, Ex. B at 2 (emphasis in original). It also provides Plaintiff the opportunity to opt-out of the terms of the Arbitration Agreement entirely, stating that "**You may reject this Agreement by mailing a rejection notice to Jiffy Lube® within 15 days after the invoice date that contains your name, address and phone number.**" *Id.*, Ex. B at 2 (emphasis in original).

Plaintiff never rejected the Arbitration Agreement.[1]  Mehmood Decl., ¶ 19.

### C. Procedural History, Plaintiff's Claim and Refusal to Arbitrate

Plaintiff filed a putative class action Complaint against Heartland, TextMarks, and Jiffy Lube International, Inc. ("JLI") on May 3, 2011 in the United States District Court for the Western District of Washington, alleging violations of the TCPA. Dkt. No. 1, *Cushnie v. Heartland Auto. Servs., Inc., et al.*, Case No. 2:11-cv-00753-RSL (W.D. Wash. 2011). On

---

[1] Heartland maintains that the same arbitration provisions applicable to Plaintiff here are likely contained in invoices signed by other putative class members who, like Plaintiff, were guests at Heartland's franchised Jiffy Lube® Service Center locations. The arbitration provisions should, therefore, also apply to those individuals and Heartland expressly reserves the right to enforce them if and when those individuals are identified and made a part of this action.

August 9, 2011, the Judicial Panel for Multidistrict Litigation issued an order transferring Plaintiff's action, as well as five other putative class actions against Heartland, TextMarks, Inc. ("TextMarks"), and JLI, to this Court for pre-trial proceedings.  MDL Dkt. No. 1.  On September 23, 2011, Plaintiff and the other putative class plaintiffs filed a Master Consolidated Class Action Complaint (the "Consolidated Complaint") against Heartland and TextMarks.  MDL Dkt. No. 7.

The Consolidated Complaint alleges that, on April 22, 2011, Heartland caused TextMarks to send a text message to the "wireless telephone numbers" of Plaintiff and a proposed class of "thousands" of other individuals, using "equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  Consolidated Compl., ¶ 35.  The Consolidated Complaint alleges that the text message Plaintiff and the other proposed class members received was an advertisement to "Jiffy Lube Customers" for a "Signature" oil change that read:

> JIFFY LUBE CUSTOMERS 1 TIME OFFER:
> REPLY Y TO JOIN OUR ECLUB FOR 45% OFF A
> SIGNATURE OIL CHANGE! STOP TO UNSUB
> MSG&DATA RATES MAY APPLY T&C: JIFFYTOS.COM

*Id.* ¶ 22.

The Consolidated Complaint alleges that Heartland and TextMarks negligently or willfully violated Section 227(b)(1)(A)(iii) of the TCPA by sending Plaintiff and the proposed class an unsolicited text message advertisement its putative members did not consent to receive. *Id.* ¶¶ 35-37.  The Consolidated Complaint seeks statutory money damages in the amount of $500 per text message sent, trebled up to $1,500 in the Court's discretion, and injunctive relief.  *Id.* ¶¶ 37-38.

On October 18, 2011, Heartland sent Plaintiff a letter demanding he agree to arbitrate his claim against Heartland and dismiss or agree to stay this action pursuant to the Arbitration Agreement.  Declaration of Fernando L. Aenlle-Rocha ("Aenlle-Rocha Decl."), ¶¶ 2-4, Ex. A. Heartland requested a response by October 25, 2011, and notified Plaintiff that his failure to respond would be considered a refusal to arbitrate.  Heartland further told Plaintiff that, in the

event he refused to arbitrate, Heartland would move to compel arbitration pursuant to the Arbitration Agreement. Aenlle-Rocha Decl., ¶¶ 2-5, Ex. A.

Plaintiff refused to arbitrate. Aenlle-Rocha Decl., ¶ 5, Ex. B.

## III.  ARGUMENT

The FAA creates a "strong presumption" in favor of arbitration and requires federal courts to enforce such agreements rigorously. *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 287 (1995); *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). To that end, Section 2 of the FAA provides, in relevant part, that:

> [A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 4 of the FAA further provides that courts shall compel arbitration when necessary to give effect to contractual arbitration agreements governed by Section 2:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court <u>shall make an order directing the parties to proceed to arbitration</u> in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4 (emphasis added).

When a party moves to compel arbitration under the FAA, a court may not review the merits of the dispute; its inquiry must be limited to whether (1) a valid agreement to arbitrate exists, (2) the arbitration agreement encompasses the dispute, and (3) the contract containing the arbitration agreement evidences a transaction involving interstate commerce. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a court finds all three elements are satisfied, it must refer the parties to arbitration. *Id.* (the FAA "leaves no place for

the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original) (internal citations omitted).

Notably, the FAA establishes "a body of federal substantive law on arbitrability" which reaches as far as Congress' Commerce Clause powers permit. *Dobson*, 513 U.S. at 273-75, 281-82; *Moses H.*, 460 U.S. at 24. The FAA's interstate commerce requirement is, therefore, satisfied—*i.e.,* a contract containing an arbitration provision "involves interstate commerce" under Section 2 of the FAA—if the at-issue contract merely touches interstate commerce, either directly or indirectly. *Dobson*, 513 U.S. at 273-75, 281-82. Moreover, the FAA's presumption in favor of arbitration is so strong that, if there are doubts as to whether an agreement to arbitrate exists or whether the scope of the arbitration agreement covers the dispute at issue, the court should resolve those doubts in favor of arbitration. *AT&T Techs, Inc. v. Comm. Workers of Am*, 475 U.S. 643, 650 (1986); *Moses H.*, 460 U.S. at 24-25; *French v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 784 F.2d 902, 908 (9th Cir. 1986).

Indeed, a court should deny a motion to compel arbitration only if "it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

### A. Plaintiff Consented to a Valid Arbitration Agreement

Courts apply ordinary state-law principles that govern the formation of contracts to determine whether the parties entered into a valid arbitration agreement.[2] *Tjart v. Smith Barney, Inc.*, 107 Wash. App. 885, 895-97 (Ct. App. Wash. 2001); *Saincome v. Truly Nolen of Am., Inc.*, Order Granting in Part and Denying in Part Defendant's Motion to Compel Arbitration, Dkt. No. 5, S.D. Cal. Case No. 3:11-cv-00825-JM-BGS (Aug. 3, 2011) (Hon. Jeffrey T. Miller presiding)

---

[2] When considering questions of state law in MDL actions, federal courts must apply the substantive state law of the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *In re Korean Air Lines Co., Ltd., Anti-Trust Litig.*, 642 F.3d 685, 699 n. 12 (9th Cir. 2011) (internal citations omitted). As the latter is from Washington, Washington law on contract formation governs. However, California law is also cited because of its similarity to Washington law and its analogous application.

1  (internal citations omitted).  As a general rule, one who accepts a contract by signing it or
2  otherwise outwardly manifesting his assent to be bound by its terms is presumed to know its
3  contents and is bound by it absent fraud, misrepresentation, or any other wrongful act by another
4  contracting party.  *Tjart*, 107 Wash. App. at 895-97; *Saluteen-Maschersky v. Countrywide
5  Funding Corp.*, 105 Wash. App. 846, 854 (Ct. App. Wash. 2001); *Saincome*, Dkt. No. 5.

6  A party assents to a contract's clearly identified terms even if he does not read them.
7  *Reinsche v. Cingular Wireless, LLC*, No. C06-1325Z, 2006 WL 3827477, at * 2 (W.D. Wash.
8  Dec. 27, 2006) (applying Washington state law); *Tjart*, 107 Wash. App. at 896-97; *Saincome*,
9  Dkt. No. 5 (citing *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
10  89 Cal. App. 4th 1042, 1049-50 (Ct. App. Cal. 2001) (customer consented to terms and
11  conditions on the back of a signed invoice because the face of the invoice stated "This is a
12  contract which includes all terms and conditions stated on the reverse side")).  The signing party's
13  ignorance of the contract terms is irrelevant and his assent thereto binding unless the terms were
14  "hidden" or "disguised."  *Tjart*,107 Wash. App. at 896-97; *Saincome*, Dkt. No. 5 ("Even if it is
15  true that Plaintiff was rushed through the signing process and was not given a copy of the
16  documents he signed – a fact that Defendant disputes – there is also no evidence that Plaintiff
17  asked for and was denied either additional time to read the Agreement or a copy of the terms to
18  take with him.  Therefore, there is insufficient justification for invalidating the Agreement on
19  these grounds")

20  California courts have applied these general principles to find that a party's silence can
21  constitute assent to an arbitration agreement under certain circumstances.  *Gentry v. Superior
22  Court*, 42 Cal. 4th 443, 468 (2007) (preempted on other grounds).  Specifically, if an arbitration
23  agreement provides it will become effective unless the recipient of that agreement opts-out or
24  rejects it within a specified period of time and in a specified manner, and the receiving party
25  thereafter fails to do so, his silence constitutes assent.  *Id.* at 469 (employee's execution of form
26  acknowledging receipt of arbitration agreement and subsequent failure to opt-out of arbitration
27  agreement within allotted time was consent to its terms); *Bischoff v. DirecTV, Inc.,* 180 F. Supp.
28  2d 1097, 1103 (C.D. Cal. 2002) (cable TV customer's silence was consent to arbitration

8

agreement where cable provider mailed arbitration agreement to customer, stating that his continued acceptance of cable TV services would constitute assent to the terms of the agreement).

Like *Saincome*, the Arbitration Agreement in Plaintiff's Invoice was not "disguised or hidden from" him. *Saincome*, Dkt. No. 5, 89 Cal. App. 4th at 1049-50. To the contrary, the Invoice went to great lengths to ensure Plaintiff was aware of its provisions. The Invoice contained a notification, immediately above Plaintiff's signature, stating that he **"agrees to the Terms & Conditions on the back of this invoice."** Mehmood Decl., ¶¶ 18-19, Ex. B at 1 (emphasis in original). The back of the invoice, in turn, clearly identified the "Arbitration Agreement," making known than an arbitration provision was one of the terms and conditions to which Plaintiff would be agreeing:

> Terms and Conditions
> Limited Warranty Certificate / **Arbitration Agreement**
>
> THE JIFFY LUBE® PLEDGE OF SATISFACTION

*Id.*, ¶¶ 18-19, Ex. B at 2 (bold added). Further, the Arbitration Agreement itself, as opposed to the other terms and conditions on the back of the Invoice, used capitalized, underlined and bolded typeface to identify itself -- "<u>MANDATORY ARBITRATION / SUBROGATION AND CLASS ACTION WAIVERS</u>" -- and set forth the Plaintiff's agreement to arbitrate, his right to pursue a claim in small claims court, and the opt-out provision. *Id.*, ¶¶ 18-19, Ex. B at 2 (emphasis in original).

Given the conspicuous nature of the Arbitration Agreement and the notifications Plaintiff received, he "clearly was or should have been aware" of the Agreement. *Saincome*, Dkt. No. 5. Nonetheless, Plaintiff signed the Invoice and **never** rejected the Arbitration Agreement.

**B.     The Arbitration Agreement Encompasses Plaintiff's Claims**

Federal substantive law governs the scope of arbitration agreements and mandates that, where an arbitration clause contains broad and unqualified language, a court construing such a clause shall require the parties to arbitrate virtually all of their claims. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 7 (1984) (franchise agreement included clause providing for arbitration

for "any controversy or claim arising out or relating to this Agreement or the breach thereof" included claims under California franchise investment law); *Tracer Research Corp. v. Nat'l Env't. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (compelling arbitration in trademark infringement dispute where arbitration agreement in licensing agreement provided that "[i]n any event any controversy or claim arising out of the Agreement cannot be settled by the parties [], such controversy or claim shall be settled by arbitration). Giving effect to the broad language of an arbitration agreement enforces the Supreme Court's mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself [or for other reasons]." *Moses H.*, 460 U.S. at 24-25; *Chiron Corp.*, 207 F.3d at 1130. Importantly, the broader the language of an arbitration clause (e.g., "any claim arising from or related to this agreement"), the stronger the presumption of arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

The arbitration clause at issue here contains the type of broad and unqualified language that requires arbitration of all claims between Plaintiff and Heartland. The Arbitration Agreement requires arbitration of "**any and all disputes, controversies or claims between [Plaintiff and Heartland] (including breach of warranty, contract, tort, or any other claim**)." Mehmood Decl., ¶¶ 18-19, Ex. B at 1 (emphasis in original). Heartland's alleged violation of the TCPA falls within the scope of this Agreement. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) (Congressional tort actions that are otherwise silent incorporate "ordinary tort-related" rules).

Plaintiff's "claim" against Heartland arises from Plaintiff's visit to Store No. 2051 on December 14, 2010, and his purchase of an oil change. Indeed, Plaintiff's December transaction is the genesis of his claim. It was during that transaction that Plaintiff: (1) purchased from Heartland the exact service Heartland allegedly later advertised to him via text message; (2) provided his cellular telephone number to Heartland, to which number the at-issue text message was allegedly sent; and (3) entered into the Arbitration Agreement. To the extent Plaintiff contends Heartland, without Plaintiff's "prior express consent," caused TextMarks to send a text message to Plaintiff's cellular telephone on April 22, 2011, Consolidated Compl., ¶ 36, Heartland intends to dispute it and will contend, in part, that Plaintiff consented to receiving such a text

message when he purchased a "Signature" oil change and provided his cellular telephone number to the employees at that franchised location as part of his transaction.[3] The Arbitration Agreement encompasses such "claims" or "disputes" and requires arbitration as a result. *See AT&T Techs., Inc.*, 475 U.S. at 650.

### C. The Invoice Involves Interstate Commerce

Heartland is a franchisee of approximately 450 Jiffy Lube® Service Centers located in at least twenty states, including California and Washington. Mehmood Decl., ¶ 6. Those franchised locations operate under the trade name Jiffy Lube®, licensed from a nationwide franchisor, Jiffy Lube International, Inc., as part of Heartland's interstate network of quick lube service centers. Mehmood Decl., ¶¶ 6-9. That network of Service Centers will, among other things, honor the service warranty for the work performed on Plaintiff's Civic on December 14 at Store No. 2051, which warranty was created by the "Terms and Conditions" on the back page of the Invoice. Mehmood Decl., ¶¶ 6-9, 23, Ex. B at 2 ("participating Jiffy Lube® Service Centers in the United States and Canada will either honor this warranty or provide you with guidance on how to pursue your warranty claim").

Accordingly, because the warranty created at Store No. 2051 is honored by Heartland's interstate network of Service Centers, the Invoice "involves interstate commerce" as required by Section 2 of the FAA. *See Dobson*, 513 U.S. at 273-75, 281-82 (where plaintiff local home owner contracted with local franchisee of nationwide pest control company to perform work on plaintiff's home, the contract was held to involve interstate commerce under Section 2 of the FAA because the nationwide franchisor "guarantee[d] the fulfillment of [its] terms").

---

[3] Heartland's position is based on a "1992 Report and Order" and "2007 Declaratory Ruling" issued by the Federal Communications Commission ("FCC") in its role as the agency charged by Congress with "prescrib[ing] regulations to implement" the TCPA. Request for Judicial Notice, Ex. N (*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, CG Docket No. 02-278, 7 FCC Rcd 8752 (September 17, 1992)), and Ex. P (*In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, 7 FCC Rcd 232 (December 28, 2007), ¶ 9). The FCC's 1992 Report and Order and 2007 Declaratory Ruling state that a person gives his "prior express consent" to receive a text message under the TCPA when he "knowingly release[s]" his phone number without also providing instructions not to call. RJN, Ex. N (1992 Report and Order, ¶ 31) and Ex. P (2007 Declaratory Ruling, ¶ 9).

### D. The Arbitration Agreement's Class Action Waiver Is Enforceable

Section 2 of the FAA does not permit state rules on "contract defenses, such as fraud, duress, or unconscionability" to invalidate arbitration agreements if to do so would "stand as an obstacle" to the accomplishment of the FAA's objectives. *AT&T Mobility LLC v. Concepcion*, 563 U.S. __, 131 S. Ct. 1740, 1746-48, No. 09-893, 2011 WL 1561956 (April 27, 2011). Arbitration is a matter of contract and the FAA's "over-arching purpose is to ensure the enforcement of arbitration agreements according to their terms," including those terms where the parties agree "*with whom*" they will arbitrate. *Id.* at 1745, 1749 (emphasis added) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, No. 08-1198, 559 U.S. __, 130 S. Ct. 1758, 2010 WL 1655826 (April 27, 2010)).

The Supreme Court's recent holding in *Concepcion* makes clear that class action waiver provisions in arbitration agreements cannot be invalidated under state laws as unconscionable for being, among other things, contracts of adhesion. *Id.* at 1750, 1752 (holding that the FAA preempts the California Supreme Court's holding in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005)); *Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, *4 (C.D. Cal. Aug. 2, 2011). The Supreme Court noted that "[t]he times in which consumer contracts were anything other than adhesive are long past." *Id.* Indeed, "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.

Plaintiff's Arbitration Agreement states that "**you also agree to only bring disputes against each other in an individual capacity and not as a class representative or class member and waive any right to a jury trial**." Mehmood Decl., ¶¶ 18-19, Ex. B at 2. Such waiver is enforceable under *Concepcion*, thereby requiring Plaintiff to pursue arbitration in his individual capacity.

### E. The Court Must Stay This Action If It Orders Arbitration

In any lawsuit "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. If the issues in the litigation fall within the scope of the

arbitration agreement, the court has no discretion to deny the stay. *Alexander v. Anthony Int'l L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003). As discussed above, the Arbitration Agreement between Heartland and Plaintiff is valid and clearly encompasses the claims at issue in the Consolidated Complaint. As a result, the Court should compel Plaintiff and Heartland to binding arbitration and stay this action pending the conclusion of that proceeding.

## IV.   CONCLUSION

For the foregoing reasons, Heartland respectfully requests that the Court enter an order (1) compelling Plaintiff to submit his individual claims to binding arbitration, and (2) staying Plaintiff's action pending the conclusion of that arbitration.

Dated:  October 26, 2011

Respectfully submitted,

WHITE & CASE LLP

By:   /s/ *Fernando L. Aenlle-Rocha*
      Fernando L. Aenlle-Rocha

*Attorneys for Defendant Heartland Automotive Services, Inc.*

**DECLARATION OF SERVICE**

I, Fernando L. Aenlle-Rocha, declare as follows:

I am employed in the County of Los Angeles in California. I am over the age of eighteen years and am not a party to this action. My business address is 633 West Fifth Street, Suite 1900, Los Angeles, California, 90071. On October 26, 2011, I served the document titled:

**DEFENDANT HEARTLAND AUTOMOTIVE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

to all named counsel of record via the ECF (Electronic Case Filing) system of the United States District Court for the Southern District of California. All counsel of record are required to be registered e-filers and, as such, are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct.

Dated: October 26, 2011                               _____/s/_ Fernando L. Aenlle-Rocha_
                                                                          Fernando L. Aenlle-Rocha