JAY EDELSON (*pro hac vice*)
jedelson@edelson.com
MICHAEL J. MCMORROW
mjmcmorrow@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Interim Class Counsel for Plaintiffs*

CLIFF CANTOR
cliff.cantor@comcast.net
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Telephone: (425) 868-7813
Facsimile: (425) 732-3752

*Counsel for Plaintiff Cushnie*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re JIFFY LUBE INTERNATIONAL, INC. TEXT SPAM LITIGATION<br><br>This filing relates to:<br><br>LAWRENCE CUSHNIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TEXTMARKS, INC. and HEARTLAND AUTOMOTIVE SERVICE, INC.,<br><br>Defendants. | No. 3:11-MD-02261-JM-JMA<br><br>MDL No. 2261<br><br>Assigned to The Hon. Jeffrey T. Miller<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HEARTLAND AUTOMOTIVE SERVICES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:  December 12, 2011<br>Time:  10:00 a.m.<br>Place:  Courtroom 4<br><br>Complaint Filed:  September 23, 2011<br>Trial Date:  None Scheduled |

**Table of Contents**

I.  INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A.  Heartland Cannot Compel Arbitration under the Jiffy Lube Arbitration Clause because Heartland Was Not a Party to the Agreement ................................. 1

        1.  The Arbitration Clause Excludes Heartland ....................................................... 1

        2.  A Non-Party to an Arbitration Clause Ordinarily Cannot Compel Arbitration ........................................................................................................ 3

        3.  Heartland Is not a Party to the Arbitration Clause ............................................. 2

    B.  Cushnie's TCPA Claim against Heartland Does Not Arise from any Contract Between Cushnie and Heartland ................................................................. 5

    C.  The Agreement that Heartland Proffered Has Expired ............................................ 8

III. CONCLUSION ................................................................................................................... 10

## Table of Authorities

**UNITED STATES SUPREME COURT CASES**

*AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986) .................... 5

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ....................................... 4

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991) ................................................ 9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ................................ 2

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, __ U.S. __, 130 S. Ct. 1758 (2010) ............... 4

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................ 3

*United Steelworkers v. Warriar & Gulf Navigation Co.*, 363 U.S. 574 (1960) .................... 4

**UNITED STATES COURTS OF APPEAL CASES**

*Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) .................................... 8, 10

*Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ........................................ 4

*Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 (9th Cir. 2011) ............................. 5

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995) ....................... 6

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) .................................. 4

*Operating Engineers Local Union No. 3 v. Newmont Min. Corp.*,
    476 F.3d 690 (9th Cir. 2007) ............................................................................... 9-10

*Poore v. Simpson Paper Co.*, 566 F.3d 922 (9th Cir. 2009) .......................................... 9

*Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003) ..................................................... 5-6

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ..................... 4

*Tracer Research Corp. v. Nat'l Environ. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994) ......... 3-4

**STATE COURT CASES**

*Aiken v. World Finance Corp. of South Carolina,* 644 S.E.2d 705 (S.C. 2007) .............. 6

*Fountain Finance, Inc. v. Hines,* 788 So. 2d 155 (Ala. 2000) ...................................... 7

*In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206 (Tex. 2007) ................................... 6

*Pavey v. Collins*, 199 P.2d 571 (Wash. 1948) .............................................................. 10

*RN Solution, Inc. v. Catholic Healthcare West,* 81 Cal. Rptr. 3d 892 (Cal. App. 2008) ..... 6

*Seifert v. U.S. Home Corp.,* 750 So. 2d 633 (Fla. 1999) .................................................................. 6-7

*Weiss v. Lonnquist*, 224 P.3d 787 (Wash. App. 2009) ....................................................................... 10

**OTHER AUTHORITIES**

9 U.S.C. §§ 1-18 ...................................................................................................................................... 4

47 U.S.C. § 227 ....................................................................................................................................... 7

RESTATEMENT (SECOND) OF CONTRACTS (1979) ........................................................................... 2, 8

21 WILLISTON ON CONTRACTS (4th ed.) ................................................................................................ 7

I.     INTRODUCTION

The motion to compel arbitration by Heartland Automotive Service, Inc. ("Heartland") fails for three simple reasons: (1) Heartland is not a party to any arbitration agreement with Plaintiff Lawrence Cushnie ("Cushnie"); (2) the claim raised in this case does not arise from any contract between Heartland and Cushnie and thus is not subject to the arbitration agreement that Heartland submitted; and (3) the contract containing the arbitration agreement expired by its own terms before the claim in this case arose. Each of these reasons independently requires the denial of Heartland's motion.

II.    ARGUMENT

### A.     Heartland Cannot Compel Arbitration under the Jiffy Lube Arbitration Agreement because Heartland Was Not a Party to the Agreement

#### 1.     The Arbitration Clause Excludes Heartland

Heartland's motion falls apart on the first page: Heartland argues that an invoice purportedly requiring customers to arbitrate disputes with "Jiffy Lube®" requires Cushnie to arbitrate his claim against Heartland. (Def. Mem. at 1:8-11, dkt. 14-1.) But nowhere has Heartland established that "Jiffy Lube®" is Heartland. To the contrary, all of Heartland's evidence establishes that Jiffy Lube® and Heartland are different.

The arbitration agreement itself brings the distinction between Jiffy Lube® and Heartland into sharp relief. The last sentence of that agreement states: "[G]uest waives and releases any rights to subrogation or contribution that any insurer or third party might otherwise acquire against **Heartland or Jiffy Lube** arising out of performance of services by **Heartland or Jiffy Lube**." (Mehmood Decl, Ex. B, dkt. 14-5, at 3 of 3) (emphasis added). Thus, the terms of the arbitration agreement itself demonstrate a distinction between "Heartland" and "Jiffy Lube"[1]— highlighting

---

[1] The reference to "Heartland" not only distinguishes that name from "Jiffy Lube" but also fails to identify, in any intelligible manner, the defendant "Heartland Automotive Service, Inc."

that Heartland is not a party to the Jiffy Lube arbitration agreement. Heartland cannot enforce the agreement; it is not a party to it.[2]

Heartland quotes the actual language of the arbitration clause in support of its argument, save for one critical substitution. Heartland writes: "The Arbitration Agreement requires arbitration of 'any and all disputes, controversies or claims between **[Plaintiff and Heartland]** (including breach of warranty, contract, tort, or any other claim).'" (Def. Mem. at 10:15-16, dkt. 14-1) (emphasis added). The actual language of that agreement requires arbitration between "**Jiffy Lube® and you**," not between "Plaintiff and Heartland."

Heartland's effort to insert itself into the arbitration agreement highlights the central flaw in its argument: Heartland is not a party to the arbitration agreement, nor is there any evidence that Heartland otherwise acquired any rights under the arbitration agreement. Therefore, Heartland cannot compel arbitration under it.

### 2.  Heartland Is not a Party to the Arbitration Agreement

The arbitration agreement on Cushnie's Jiffy Lube® invoice is clear about its parties—it requires customers to arbitrate all disputes with "Jiffy Lube®," not with Heartland Automotive Service, Inc. (or any other entity). There is no suggestion in that agreement that Heartland Automotive Service, Inc. is entitled to enforce the rights of "Jiffy Lube®"; in fact, the arbitration agreement distinguishes "Heartland" from "Jiffy Lube." The front of the invoice, which purports to bind customers to the terms and conditions on the following page, bears the name of a single entity, Jiffy Lube International, Inc., directly below the sole signature line in the agreement. This is the only corporate name identified on either side of the invoice (Heartland is referenced only by

---

[2] Even if the terms of the arbitration agreement were less clear, rules of contract interpretation would require construction of any ambiguity against the drafter. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-63 (1995) ("respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it. Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt."). The rationale behind this rule is that, "Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party." RESTATEMENT (SECOND) OF CONTRACTS § 206, Cmt. a (1979).

"Heartland"), and Jiffy Lube International, Inc. is the owner of the trademark Jiffy Lube®. (*See* Mehmood Decl. Ex. A-1, dkt. 14-3 at p. 6 of 27.) Any consumer of average intelligence who read this invoice would understand from the front of the form contract that the other contracting party was Jiffy Lube International, Inc., not Heartland. Accordingly, the four corners of the invoice compel the conclusion that Jiffy Lube International, Inc., and not Heartland, is entitled to compel arbitration.

Defendant argues that it is entitled to enforce the arbitration clause because Heartland is the owner of approximately 450 franchised service centers operating under the "Jiffy Lube®" trade name, including Jiffy Lube #2051, the location that Cushnie purportedly visited in March 2006. (Def. Mem. at 1:28 – 2:5.) But Heartland fails to mention that the franchise agreement for Jiffy Lube #2051 is solely between Jiffy Lube International, Inc. and **Oil Express, Inc.**, not Heartland. (Mehmood Decl. Ex. A-1, dkt. 14-3, *e.g.* at p. 2 of 27 and p. 6 of 27 (in introductory paragraph)). Oil Express, Inc. is a "wholly owned entity" of Heartland. (Mehmood Decl. ¶ 9, dkt. 14-2 at p. 4 of 9.) It is a fundamental tenant of corporate law that subsidiaries are separate and distinct from the parent corporation, even if the parent exercises complete ownership. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Oil Express, Inc., as a subsidiary, is a separate and distinct entity from Heartland and its contractual rights and duties do not pass to Heartland solely because of Heartland's ownership interest.[3] Accordingly, Heartland is simply not a party to the arbitration clause.

### 3. A Non-Party to an Arbitration Agreement Cannot Compel Arbitration

Heartland fails to demonstrate that it has any right to enforce the arbitration agreement. Arbitration is a creature of contract and "a party cannot be required to submit to arbitration any

---

[3] The franchises themselves are not parties to the arbitration clause either. Just as the arbitration clause distinguishes Heartland from Jiffy Lube, it also distinguishes both those entities from the individual franchises. The individual franchise that performed the services is described in the warranty provisions as the "Jiffy Lube® Service Center that performed the services." (Mehmood Decl. Ex. B, dkt. 14-5 at p. 3 of 3, in second paragraph.) The arbitration clause is not between the customer and a "Jiffy Lube® Service Center," it is only between the customer and "Jiffy Lube®."

dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Environ. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citing *United Steelworkers v. Warriar & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  Precisely because of the contractual nature of arbitration agreements, "parties may agree to limit the issues they choose to arbitrate" and "the parties may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, __ U.S. __, 130 S. Ct. 1758, 1774 (2010) (emphasis in original); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("arbitration is simply a matter of contract between *the parties*; it is a way to resolve *those disputes*—but only those disputes—that *the parties* have agreed to submit to arbitration") (emphasis added).

Since the right to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-18 ("FAA"), exists exclusively by virtue of a consensual agreement in a private contract, "[t]hat contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (arbitration "agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract").  While Heartland argues that the FAA creates a "strong presumption" in favor of arbitration, the presumption does not apply if contractual language does not cover the dispute or the parties. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009) ("[t]he presumption in favor of arbitration … does not apply 'if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provisions'").  Cushnie never contracted with or agreed to arbitrate any disputes with Heartland Automotive Service, Inc.

The fact that Heartland is not a party to the arbitration agreement is fatal to Heartland's attempt to compel arbitration.  Cushnie never agreed to arbitrate any claims—much less a claim under the TCPA—with Heartland, and this fact requires denial of Heartland's motion.

### B. Cushnie's TCPA Claim Against Heartland Does Not Arise from any Contract Between Cushnie and Heartland

Heartland's Motion to Compel also fails because Cushnie's TCPA claim in this case does not arise from the contract containing the arbitration clause and is not subject to it.[4] When a valid agreement to arbitrate exists, courts routinely require arbitration of tort claims that arise from the contract between the parties. Courts do not, however, require arbitration of claims that arise independently of the contract between the parties. *See AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (arbitration is a matter of contract and that a party cannot be required to submit to arbitration any suit it has not agreed to arbitrate). Even broad language in an arbitration agreement (*e.g.*, "any and all disputes") does not make disputes unrelated to the contract arbitrable. Various courts—including the Ninth Circuit—have noted the absurdity of arguing that claims unrelated to a contract nonetheless are arbitrable thereunder.

For example, "when a tort claim constitutes an 'independent wrong from any breach' of the contract it 'does not require interpretation of the contract and is not arbitrable …'" *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (collecting authorities). And, "a tort claim is not arbitrable just because it would not have arisen 'but for' the parties' agreement." *Id.* Finding that the dispute at issue involved a tort based on state and maritime tort law, and did not turn on an interpretation of "any clause in the contract" or the defendant's "performance under the contract," the Ninth Circuit found the dispute "not arbitrable." *Id.*

In another case, the defendant argued that a contractual arbitration agreement requiring arbitration of any "common law claims, based upon contract, tort, fraud, and other intentional torts" and of "claims based upon a violation of any state or federal constitution, statute or regulation" allowed arbitration of such claims whether they related to the underlying agreement or

---

[4] Heartland argues: "Plaintiff's 'claim' against Heartland arises from Plaintiff's visit to Store No. 2051 on December 14, 2010, and his purchase of an oil change." (Def. Mem. 10:20-21.) This is absurd. As is readily apparent from the complaint, Cushnie's claim under the TCPA arises from receiving text spam, not an oil change.

not. *Smith v. Steinkamp*, 318 F.3d 775, 776 (7th Cir. 2003). The Seventh Circuit rejected the argument, stating that, if the arbitration provision is

> read as standing free from any loan agreement, absurd results ensue, for example that if [defendant] murdered [plaintiff] in order to discourage defaults and her survivors brought a wrongful death suit … [defendant] could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of [defendant] picked [plaintiff's] pocket when she came in to pay back the loan, and [plaintiff] sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in [plaintiff's] home 20 years after her last transaction with [defendant].

*Smith*, 318 F. 3d at 777.

The Tenth Circuit has noted and rejected the same absurdity. It stated that

> if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995).

State courts considering the issue have similarly rejected attempts to read arbitration clauses as unlimited in scope. *See RN Solution, Inc. v. Catholic Healthcare West,* 81 Cal. Rptr. 3d 892, 902 (Cal. App. 2008) ( "even the broadest arbitration clauses obviously cannot cover every type of dispute that might arise"); *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206 (Tex. 2007) ("[c]laims must be brought on the contract, and must be arbitrated pursuant to the contract's arbitration clause, if liability arises solely from the contract, but claims can be brought in tort, and in court, if liability arises from general obligations imposed by law"); *Aiken v. World Finance Corp. of South Carolina,* 644 S.E.2d 705, 709 (S.C. 2007) (the "most broadly-worded arbitration agreements still have limits founded in general principles of contract law," therefore refusing "to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings"); *Seifert v. U.S. Home Corp.,* 750

So. 2d 633, 638 (Fla. 1999) ("the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement"); *Fountain Finance, Inc. v. Hines,* 788 So. 2d 155, 158 (Ala. 2000) ("[t]o hold otherwise would allow persons signing broad arbitration provisions to commit intentional torts against one another, which torts are outside the scope of their contemplated dealings, without concern that they might have to answer for their actions before a jury of their peers").

Tort claims may be submitted to arbitration, but the tort must be arbitrable—that is, it must relate to the contract containing the arbitration provision. *See, e.g.,* 21 WILLISTON ON CONTRACTS § 57:31 (4th ed.) ("whether a tort claim is sufficiently related to a contract between the parties so as to be arbitrable depends on the factual allegations in the complaint instead of the legal labels attached to the causes of action, but only to the extent that an action formally labeled a tort is in essence a breach of contract claim or based on a breach of contract"). The "test for whether a tort claim 'relates to' a contract depends on whether the claim could be maintained without reference to the contract." *Id*.

As these authorities make clear, any demand for arbitration must relate to the parties' contract. Cushnie's TCPA claim in this suit does not arise from any agreement between Cushnie and Heartland, and Cushnie does not reference any contract with Heartland in the Complaint. Although Heartland argues that Cushnie's claim "arises from Plaintiff's visit to Store No. 2051 … and his purchase of an oil change," (Def. Mem. at 10:20-21), this is incorrect; Cushnie's claim arises from defendants' text-message spam.[5] Heartland cannot credibly claim that its service center's provision of an oil change to Cushnie constituted "prior express consent," *see* 47 U.S.C. § 227(b)(1)(A), for Heartland to send text-message advertisements to him; the invoice contains no reference to Heartland contacting Cushnie for any reason. (*See* Mehmood Decl. Ex. B, dkt. 14-5.)

---

[5] Because this argument is discussed at length in both Heartland's Motion to Dismiss and Plaintiff's Opposition to that Motion (filed concurrently herewith), Plaintiff incorporates his arguments from the opposition to the motion to dismiss. *See* Pls.' Opp. to Mot. to Dismiss at § V.B.

The invoice suggests several instances in which Cushnie may want to contact Heartland or the service center, but it never suggests that Heartland will contact Cushnie. Even Heartland's own declarant, Mr. Mehmood, does not suggest that Heartland considers guests' provision of personal information as consent to send text-message spam to them or that guests provide their personal information so that Heartland can send spam. (*See* Mehmood Decl., dkt. 14-2.) Cushnie's TCPA claim simply has nothing to do with the agreement on the back of the invoice.

Because Cushnie could and did bring his TCPA claim without reference to the agreement on the back of the invoice (*see* Complaint), his claim does not "relate to" the warranty/arbitration agreement proffered by Heartland. The TCPA claim that Cushnie pleaded does not turn on an interpretation of any clause in the contract proffered by Heartland, nor does it turn on the performance of Heartland or its service centers under the contract. Heartland's motion to compel arbitration fails for this reason as well.

### C.     The Agreement that Heartland Proffered Has Expired

Heartland's Motion to Compel also fails for a third independent reason - the contract of which that arbitration clause is a part expired by its own terms well before Cushnie's claim against Heartland arose. When "a contract expires, it expires. It is at an end. The parties have no more rights or duties under it." *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993); *see* RESTATEMENT (SECOND) OF CONTRACTS § 230 (1981) ("if under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs").

The contract at issue expired more than a month before Cushnie's claim in this case arose. The operative promise in the contract is the warranty made by "the Jiffy Lube Service Center that performed the services." (*See* Mehmood Decl. Ex. B, dkt. 14-5 at p. 3 of 3.) That warranty states that the "Service Center warrants that [its] services and products will be free from defects in material or workmanship for either three months or 3,000 miles of use, whichever comes first measured from the date of services or mileage shown on the original invoice." *Id*. If "the oil filter or fluids fail to perform properly during the warranty period, this Service Center will install a new

oil filter and replace any fluids." *Id*. The date of services is explicit: December 14, 2010. (Mehmood Decl. Ex. B, dkt. 14-5 at p. 2 of 3).

The warranty expired by its own terms on March 13, 2011, more than a month before the actions giving rise to Cushnie's claim. Cushnie received the text-message spam on which he bases his claim on April 22, 2011. (*See* Master Complaint, dkt. 7, ¶¶ 22-23.) The contract that contained the arbitration provision was no longer in existence and, as a result, any right Heartland may have had to demand arbitration had already expired.

An expired contract cannot form the basis of an agreement to arbitrate. *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190 (1991). The Court in *Litton* stated that the "object of an arbitration clause is to implement a contract, not to transcend it." *Litton*, 501 U.S. at 205. The facts of *Litton* are similar to this case and control the outcome here. In *Litton*, the Supreme Court described the parties' arbitration clause as "unlimited," as Heartland asserts the arbitration clause is in this case. *See id*. The Court stated that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id*. at 206. The Court held that:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id*. at 205-06. The Court refused to apply the "presumption of arbitrability" in the context of an expired contract, because "to do so would make limitless the contractual obligation to arbitrate." *Id*. at 209.

Other courts have followed this test, including the Ninth Circuit. *See Poore v. Simpson Paper Co.*, 566 F.3d 922, 926-27 (9th Cir. 2009) (*citing Litton*) ("[a]s a general rule, where the contract at issue has expired, the parties are 'released ... from their respective contractual obligations' and any dispute between them cannot be said to arise under the contract"); *Operating Engineers Local Union No. 3 v. Newmont Min. Corp.*, 476 F.3d 690, 693 (9th Cir. 2007) (a claim

"arises under the contract, and therefore subjects the parties to arbitration, only if it meets one of the three prongs of the *Litton* test).

The state courts of Washington similarly will compel arbitration under an expired contract only where the claims accrue during the term of the contract. *Weiss v. Lonnquist*, 224 P.3d 787, 793 (Wash. App. 2009) (stating that because the claims did not accrue until after a contract was terminated, the "contract itself does not require the parties to arbitrate.") This conclusion follows from established Washington law that "a contract which by its terms has expired is legally defunct." *Pavey v. Collins*, 199 P.2d 571, 574 (Wash. 1948). To "bring the terms of an extinguished contract into renewed existence requires a new contract embodying such terms." *Id*.

A "court should cast a cold eye on contentions that a contract with a fixed term actually created a perpetual obligation." *Bidlack*, 993 F.2d at 606. Yet that is what Heartland contends here. The court should reject Heartland's contention, because the contract upon which Heartland demands arbitration expired by its terms more than a month before Heartland sent the text-message spam that forms the basis of Cushnie's claim.

## III.   CONCLUSION

As demonstrated above, Heartland is not a party to any arbitration agreement with Cushnie. Furthermore, the TCPA violation that Cushnie pled in this case does not arise from and is not related to the contract between Cushnie and the service center franchised by Oil Express, Inc. that changed Cushnie's oil. Finally, the agreement upon which Heartland seeks to compel arbitration expired by its own terms more than a month before the actions that comprise the TCPA violation pled in this case. Each of these facts independently requires this Court to reject Heartland's motion to compel arbitration.

Plaintiff Cushnie respectfully requests that this Court deny Heartland's motion to compel arbitration, and requests such other and further relief as this Court in its discretion deems just.

Dated:  November 22, 2011    Respectfully submitted,

s/ JAY EDELSON (*pro hac vice*)
jedelson@edelson.com
s/ MICHAEL J. MCMORROW
mjmcmorrow@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Interim Class Counsel for Plaintiffs*

s/ CLIFF CANTOR
cliff.cantor@comcast.net
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Telephone: (425) 868-7813
Facsimile: (425) 732-3752

*Counsel for Plaintiff Cushnie*

Douglas J. Campion
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South
Suite 303
San Diego, CA 92108
(619) 299-2091 (phone)
(619) 858-0034  (fax)

*Liaison Class Counsel*

## CERTIFICATE OF SERVICE

I, Michael J. McMorrow, an attorney, certify that on November 22, 2011, I served the above and foregoing ***Opposition to Defendant Heartland Automotive Services, Inc.'s Motion to Compel Arbitration and Stay Litigation*** by causing true and accurate copies of such paper to be filed and transmitted to the persons registered to receive such notice via the Court's CM/ECF electronic filing system.

   /s/ Michael J. McMorrow