# Exhibit 1

EXECUTION COPY

## CLASS ACTION SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Settlement Agreement" or "Agreement") is entered into as of the date fully executed by and between Plaintiffs Joseph Crowl, Lawrence Cushnie, Tramy Duong, Rene Heuscher, Edward Koeller, Dawn Souder, and Jacob Barr (each a "Plaintiff" and collectively, the "Plaintiffs"), individually and on behalf of the class of persons they seek to represent; Heartland Automotive Services, Inc. ("Heartland"); and TextMarks, Inc. ("TextMarks" and, together with Heartland, the "Defendants"). Plaintiffs and Defendants are sometimes collectively referred to herein as the "Parties." This Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims as against the Released Parties (as those terms are defined below) upon and subject to the terms and conditions of this Agreement and subject to the final approval of the Court.

## RECITALS

The following recitals are material terms of this Agreement, and all terms are used as defined in Section 1 below except as otherwise defined herein. This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.      Between April and June 2011, Plaintiffs Crowl, Cushnie, Duong, Heuscher, Koeller, and Souder each filed a putative class action lawsuit against Heartland, TextMarks, and/or Jiffy Lube International, Inc. ("Jiffy Lube"). Each of these six putative class action lawsuits were based on a text message (the "Text Message") that was allegedly sent from SMS short codes "41411" and "72345" to Plaintiffs' cellular telephones on or about April 21, 2011, containing language similar to the following:

> JIFFY LUBE CUSTOMERS 1 TIME OFFER:
> REPLY Y TO JOIN OUR ECLUB FOR 45% OFF A
> SIGNATURE SERVICE OIL CHANGE! STOP TO UNSUB
> MSG&DATA RATES MAY APPLY T&C: JIFFYTOS.COM

These plaintiffs alleged that this text message was sent using an automatic telephone dialing system and without their prior express consent, in violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act (the "TCPA"), codified at 47 U.S.C. § 227 *et seq.*

B.      On January 10, 2012, Plaintiff Barr filed a putative class action lawsuit in King County Superior Court against Heartland and Oil Express, Inc. ("Oil Express") based on the Text Message. Plaintiff Barr alleged that he received the Text Message on his cellular telephone and that the Text Message was a commercial text message sent without his prior consent in violation of the Washington Consumer Protection Act (the "CPA") and the Washington Commercial Electronic Mail Act (the "CEMA"), codified at RCW 19.86.010 *et seq.* and RCW 19.190.010 *et seq.*, respectively. On February 10, 2012, Heartland removed Plaintiff Barr's action to federal district court pursuant to the Class Action Fairness Act of 2005. Plaintiff Barr subsequently moved to remand, which was denied after full briefing by Judge Marsha J. Pechman of the United States District Court for the Western District of Washington.

C.      By orders dated August 8, 2011 and August 24, 2011, the Judicial Panel on Multidistrict Litigation (the "JPML") centralized the six original actions before the Honorable Judge Jeffrey T. Miller in the United States District Court for the Southern District of California for coordinated or consolidated pretrial proceedings under the caption *In re: Jiffy Lube International, Inc., Text Spam Litigation*, MDL No. 2261, Case No. 3:11-md-02261-JM-JMA (the "Action").  On October 31, 2011, the Court appointed attorneys Jay Edelson and Michael J. McMorrow as Interim Class Counsel and Douglas J. Campion as Liaison Class Counsel for the Plaintiffs.  On June 8, 2012, the JPML transferred Plaintiff Barr's action into MDL No. 2261 after complete briefing.

D.      On September 23, 2011, Plaintiffs Crowl, Cushnie, Duong, Heuscher, Koeller, and Souder filed a Master Consolidated Class Action Complaint for Damages and Injunction against Defendants.  Heartland filed motions to compel arbitration and to dismiss the Action on October 26, 2011, which the Court denied on March 9, 2012 after full briefing, intervention by the United States of America in opposition to Heartland's constitutional challenges, and oral argument.  Heartland has since appealed the Court's denial of its motion to compel arbitration as of right, and this appeal is currently pending before the Ninth Circuit Court of Appeals.

E.      On March 13, 2012, the Court ordered the Parties to attend an Early Neutral Evaluation Conference (the "Conference") presided over by the Honorable Magistrate Judge Jan M. Adler.  To facilitate meaningful discussion at the Conference, Plaintiffs requested and Heartland provided certain discovery material on an informal and confidential basis in advance of the Conference, which included information about the Settlement Class and documents regarding Heartland's financial condition.

F.      Representatives of Defendants, Heartland Counsel, TextMarks Counsel, and Class Counsel appeared in person at the Conference on April 30, 2012, where Magistrate Judge Adler conducted a full day of mediation.  After making significant progress at the Conference, the Parties continued their ongoing settlement discussions.  Following an additional status call with Magistrate Judge Adler on May 15, 2012, the Parties were able to reach an agreement in principle on June 1, 2012.

G.      Defendants deny the claims asserted against them in the Action, deny all allegations of wrongdoing and liability, and maintain that they have meritorious defenses to Plaintiffs' claims.  In particular, Defendants were prepared to defend the claims on the grounds that, *inter alia*, (1) Heartland could not be held liable for the alleged conduct of TextMarks, or vice versa, (2) the alleged Text Message was not sent using an automatic telephone dialing system, (3) Plaintiffs had provided their prior express consent to receiving the Text Message, (4) a substantial number of potential class members had agreed to arbitrate their claims against Heartland, (5) Section 227(b)(1)(A)(iii) of the TCPA violates the First Amendment both facially and as-applied, (6) the TCPA's statutory damages provisions are unconstitutional, and (7) Plaintiffs' claims are inappropriate for adversarial class action treatment.  Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants have concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to them that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.  This Settlement is a

compromise, and the Settlement, the Agreement, any related documents, and any negotiations resulting in this Settlement shall not be construed or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendants with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

H.      Plaintiffs and Class Counsel believe that the claims asserted in the Action have merit and that they could have certified an adversarial class action.  Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued prosecution of the Action against Defendants through trial and any subsequent appeals.  Plaintiffs and Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation.  Therefore, Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred as against the Released Parties pursuant to the terms set forth herein.

I.      Based on their evaluation, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

J.      The Parties agree that the Settlement was reached in good faith following arm's-length bargaining presided over by Judge Adler acting as a neutral mediator, and that the Settlement reflected herein confers substantial benefit upon the Parties and the Settlement Class.

K.      The total consideration payable by the Defendants to the Settlement Class was negotiated and agreed upon separate and apart from any agreement as to the consideration to be paid to Class Counsel on account of attorneys' fees and expenses or incentive awards to the Class Representatives, and Final Approval of this Agreement is not conditioned on any consideration to be received by Class Counsel or the Class Representatives.

NOW, THEREFORE, it is hereby stipulated and agreed by and among Plaintiffs, individually and on behalf of the Settlement Class, and Defendants, by and through their respective undersigned counsel that, subject to the final approval of the Court after a hearing or hearings as provided for in this Agreement, in consideration of the benefits flowing to the Parties from the Agreement as set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released as against the Released Parties, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## **AGREEMENT**

1.      **DEFINITIONS**.

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1 **"Action(s)"** means the multidistrict litigation captioned *In re: Jiffy Lube International, Inc., Text Spam Litigation*, MDL No. 2261, Case No. 3:11-md-02261-JM-JMA in the United States District Court for the Southern District of California, which is comprised of the following seven actions:

(a) *Crowl v. Jiffy Lube International, Inc.*, No. 3:11-00865 (S.D. Cal.);

(b) *Cushnie v. Heartland Automotive Services, Inc.*, No. 2:11-00753 (W.D. Wash.);

(c) *Duong v. Jiffy Lube International, Inc.*, 3:11-00943 (S.D. Cal.);

(d) *Heuscher v. Heartland Automotive Services, Inc.*, 3:11-02048 (N.D. Cal.);

(e) *Koeller v. TextMarks, Inc.*, No. 11-cv-2773 (N.D. Cal.);

(f) *Souder v. Jiffy Lube International, Inc.*, No. 3:11-00896 (S.D. Cal.); and

(g) *Barr v. Oil Express, Inc.*, No. 2:12-00237 (W.D. Wash.).

1.2 **"Additional Counsel"** means all counsel, other than Class Counsel, representing, appearing, or performing any legal or other work on behalf of any plaintiff in any of the Actions and/or any Settlement Class Member in connection with the Text Message or this Action.

1.3 **"Certificate"** means one side of two-sided postcard with full color print measuring 5.5" x 11" substantially in the form of Exhibit A hereto that shall be mailed to each address on the Settlement Class List and that shall specifically include, *inter alia*, (i) a unique certificate number, (ii) instructions for redeeming the Certificate for the Certificate Goods/Services Amount in accordance with in Section 2.3(b), (iii) instructions for redeeming the Certificate for the Certificate Cash Amount as described in Section 2.3(c), (iv) a statement that the precise Certificate Goods/Services Amount and the precise Certificate Cash Amount will be determined by the Court and will be posted at http://heartland.jiffylube.com/textmessagesettlement, (v) a statement that the Certificate Goods/Services Amount is expected to be approximately $17.29 and the Certificate Cash Amount is expected to be approximately $12.97, depending on Court approval, (vi) selected goods and/or services that are generally available for sale at Heartland-owned Jiffy Lube stores for less than the expected Certificate Goods/Services Amount, and (vii) a clear and conspicuous statement that the Certificate is only valid and may only be redeemed in the event the Settlement is approved by the Court.  The reverse side of the Certificate shall contain the Mailed Notice.

1.4 **"Certificate Cash Amount"** means the amount of cash for which each Certificate is redeemable in accordance with Section 2.3(c) and is calculated by (i) multiplying the number of Persons on the Settlement Class List on the Effective Date by $15.00, (ii) subtracting the cash redemption component of the Fee Award, and (iii) dividing the resulting number by the number of Persons on the Settlement Class List on the Effective Date.  For illustrative purposes, in the event the Court approves the Fee Award proposed in Section 9.1 of

this Agreement and no additional Certificates are mailed to Persons added to the Settlement Class List pursuant to Section 2.4(c), the Certificate Cash Amount would be

$$(2,342,239 \times \$15.00) - \$4,750,000) / 2,342,239 = \mathbf{\$12.97}$$

1.5     **"Certificate Goods/Services Amount"** means the value of the goods and/or services at Heartland-owned Jiffy Lube stores for which the Certificate is redeemable in accordance with Section 2.3(b) and is calculated by (i) multiplying the number of Persons on the Settlement Class List on the Effective Date by $20.00, (ii) subtracting the goods/services value of the Fee Award, and (iii) dividing the resulting number by the number of Persons on the Settlement Class List on the Effective Date.  For illustrative purposes, in the event the Court approves the Fee Award proposed in Section 9.1 of this Agreement and no additional Certificates are mailed to Persons added to the Settlement Class List pursuant to Section 2.4(c), the Certificate Goods/Services Amount would be

$$(2,342,239 \times \$20.00) - \$6,333,333.33) / 2,342,239 = \$17.29$$

1.6     **"Class Counsel"** means Lead Class Counsel Jay Edelson of Edelson McGuire, LLC and Michael J. McMorrow of Smith & McMorrow, P.C.; and Liaison Class Counsel Douglas J. Campion of the Law Offices of Douglas J. Campion.

1.7     **"Class Representatives"** means Joseph Crowl, Lawrence Cushnie, Tramy Duong, Rene Heuscher, Edward Koeller, Dawn Souder, and Jacob Barr.

1.8     **"Conference"** means the Early Neutral Evaluation Conference attended by Representatives of Defendants, Heartland Counsel, TextMarks Counsel, and Class Counsel on April 30, 2012.

1.9     **"Court"** means the United States District Court for the Southern District of California.

1.10    **"Defendants"** means Heartland Automotive Services, Inc. and TextMarks, Inc.

1.11    **"Effective Date"** means either (i) the date on which time expires for filing or noticing any appeal of Final Approval, <u>or</u> (ii) if there is an appeal of Final Approval, the date of completion, in a manner that finally affirms and leaves in place the Final Approval without any material modification, of all proceedings arising out of the appeal or appeals (including the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand).  If no Settlement Class Member timely objects to the Agreement or is otherwise permitted to appeal, the Effective Date shall be the date of Final Approval.

1.12    **"Fairness Hearing"** means the hearing before the Court pursuant to Federal Rule of Civil Procedure 23(e)(2) where the Parties will request Final Approval.

1.13　**Fee Award***"* means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel.

1.14　**"Final Approval"** means the entry by the Court of a final judgment approving this Settlement as fair, adequate, and reasonable in accordance with applicable jurisprudence; entering an order of dismissal with prejudice against Defendants; ruling on the applications for the Fee Award and the incentive awards to the Class Representatives; and issuing such other findings and determinations as the Court or the Parties deems necessary and appropriate to effectuate the terms of this Agreement.

1.15　**"Full Circle"** means Full Circle Solutions, Inc., a marketing and marketing fulfillment services company that has agreed to provide certain services in support of the Settlement.

1.16　**"Heartland Counsel"** means Glenn M. Kurtz and Kimberly A. Haviv of White & Case LLP.

1.17　**"Mailed Notice"** means one side of a two-sided color postcard measuring 5.5" x 11" substantially in the form of Exhibit B hereto that shall be mailed to all addresses on the Settlement Class List.  The reverse side of the Mailed Notice shall contain the Certificate.

1.18　**"Notice"** means the notice of this proposed Class Action Settlement Agreement and the Fairness Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, and is consistent with the requirements of Due Process and Rule 23, as approved by the Court.

1.19　**"Notice Date**" means the date by which the Notice Plan set forth in Paragraph 4 is complete, which shall be a date no later than twenty-one (21) days after Preliminary Approval.

1.20　**"Notice Plan"** means the proposed plan of disseminating notice to the Settlement Class of the proposed Settlement and the Fairness Hearing described in Section 4 below.

1.21　**"Objection/Exclusion Deadline"** means the date by which a written objection to Settlement or a request for exclusion submitted by a Settlement Class Member must be postmarked and/or filed with the Court, which shall be designated as a date no later than forty-five (45) days after the Notice Date or such other date as ordered by the Court.

1.22　**"Person(s)"** means any individual(s), corporation(s), trust(s), partnership(s), Limited Liability Company(ies), or other legal entity(ies) and their respective predecessors, successors, or assigns.

1.23　**"Plaintiffs"** means Joseph Crowl, Lawrence Cushnie, Tramy Duong, Rene Heuscher, Edward Koeller, Dawn Souder, and Jacob Barr.

1.24    **"Preliminary Approval"** means the entry by the Court of an order preliminarily approving this Settlement, certifying the Settlement Class for settlement purposes only, and approving the Notice and the Notice Plan.

1.25    **"Released Claims"** means any and all claims, demands, liabilities, duties, rights, obligations, or causes of action whatsoever belonging to any of the Releasing Parties, pursuant to the TCPA, the CPA, the CEMA, or other federal, state, local, statutory, or common law, or any other law, rule, or regulation, related to, arising out of, or in any way connected to the alleged transmission of the Text Message, whether or not such claims were or could have been asserted in the Action, including claims sounding in law or in equity, whether accrued or unaccrued, suspected or unsuspected, known or unknown, direct or derivative, and including Unknown Claims as defined below.

1.26    **"Released Parties"** means Heartland, TextMarks, Jiffy Lube, and Oil Express as well as any other entity in which Heartland, TextMarks, Jiffy Lube, and/or Oil Express has a controlling interest, to which they are related, or with which they are affiliated, and any and all of any such entities' present, past, or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent entities, subsidiaries, franchises, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, shareholders, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, auditors, investment advisors, legal representatives, and/or successors in interest.

1.27    **"Releases"** means the releases provided for in Section 3 of this Agreement.

1.28    **"Releasing Parties"** means Plaintiffs, Settlement Class Members, and any Person claiming by or through any Plaintiff or any Settlement Class Member as his, her, or its spouse, marital community, parent, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate, whether or not he, she or it receives any Settlement Benefits.

1.29    **"Settlement"** means the settlement contemplated by this Settlement Agreement.

1.30    **"Settlement Administrator"** means Epiq Class Action & Claims Solutions.

1.31    **"Settlement Benefits"** means the benefits a Settlement Class Member may receive pursuant to this Agreement.

1.32    **"Settlement Class"** means all Persons residing in the United States and its Territories who were sent the Text Message in April 2011.

1.33    **"Settlement Class List"** means a database maintained by Full Circle in accordance with Section 2.4 containing the 2,342,239 cellular telephone numbers to which the Text Messages were sent that includes 1,961,655 names and U.S. mailing addresses of Settlement Class Members.

1.34     **"Settlement Class Members"** means Persons who fall within the definition of the Settlement Class as set forth above and who have not at any time submitted a valid request for exclusion.

1.35     **"TextMarks Counsel"** means Brian D. Buckley of Fenwick & West LLP.

1.36     **"Text Message(s)"** means a text message from SMS short codes "41411" and "72345" sent in April 2011 containing language similar to the following:

> JIFFY LUBE CUSTOMERS 1 TIME OFFER:
> REPLY Y TO JOIN OUR ECLUB FOR 45% OFF A
> SIGNATURE SERVICE OIL CHANGE! STOP TO UNSUB
> MSG&DATA RATES MAY APPLY T&C: JIFFYTOS.COM

similar to the text messages allegedly received by Plaintiffs on or about April 21, 2011.

1.37     **"Total Cash Value"** means the maximum aggregate amount of cash that Heartland could be required to provide pursuant to this Agreement in accordance with and subject to the terms and conditions of this Agreement and the Certificates as described herein, from which any cash provided to Class Counsel as a Fee Award will be paid.

1.38     **"Total Goods/Services Value"** means the maximum aggregate value of goods and/or services at Heartland-owned Jiffy Lube stores that Heartland could be required to provide pursuant to this Agreement, in accordance with and subject to the terms and conditions of this Agreement and the Certificates as described herein, from which any such value provided to Class Counsel as a Fee Award will be paid.

1.39     **"Unknown Claims"** means claims that could have been raised in this Action that Plaintiffs, Settlement Class Members, and/or other Persons whose claims are being released do not know of or suspect to exist which, if known, may affect their agreement to release the Released Parties and/or the Released Claims, and may affect their decision to agree, object, or not object to the Settlement.  Upon the Effective Date, Plaintiffs and all other Persons whose claims are being released shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs, Settlement Class Members, and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is

similar, comparable, or equivalent to § 1542 of the California Civil Code.  Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims as against the Released Parties, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.      **SETTLEMENT RELIEF**.

   2.1     **Prohibition on Future Text Messages and Associated Injunctive Relief**.

      (a)     Heartland agrees that, as of the Effective Date, it shall not send or direct the sending of any marketing text message to any Person without first obtaining that Person's prior express consent.  For purposes of this Subsection 2.1(a), "prior express consent" means informed, written consent that contains a clear and conspicuous disclosure that the Person is agreeing to receive text messages by or from Heartland and "prior express consent" includes without limitation (i) a text message or e-mail transmitted to Heartland and/or its agent(s) indicating consent or (ii) a checked box on an online form indicating consent.  Heartland shall keep documented proof of all prior express consent received from such Persons for a period of two (2) years after said consent is obtained.  Heartland is also permitted to send or direct the sending of marketing text messages in a manner consistent with applicable laws as such laws may exist from time to time.

      (b)     TextMarks agrees that, as of the Effective Date, it shall not send any marketing text message to any Person without first obtaining (1) that Person's prior express consent or (2) an express representation from TextMarks' client(s) that such consent was obtained.  For purposes of this Section 2.1(b), "prior express consent" means informed, written consent that contains a clear and conspicuous disclosure that the Person is agreeing to receive text messages by or from TextMarks or its client(s), as applicable, and "prior express consent" includes without limitation (i) a text message or e-mail transmitted to TextMarks and/or its clients indicating consent or (ii) a checked box on an online form indicating consent.  Further, TextMarks shall keep documented proof of all prior express consent received from such Persons, or the express representation of TextMarks' client(s) that such consent was obtained, for a period of two (2) years after said consent is obtained.  For the avoidance of doubt, TextMarks is entitled to rely upon express representations by its clients that prior express consent has been obtained.  TextMarks is also permitted to send or direct the sending of marketing text messages in a manner consistent with applicable laws as such laws may exist from time to time.

      (c)     The order granting Final Approval shall include provisions enjoining Defendants from sending or directing the sending of marketing text messages consistent with this Section 2.1.

   2.2     **Settlement Certificates**.

      (a)     This Settlement Agreement contemplates a Total Goods/Services Value of $46,844,780 and a Total Cash Value of $35,133,585 in the form of the Certificates described herein, subject to the terms and conditions described herein.

EXECUTION COPY

(b)      Within twenty-one (21) days of Preliminary Approval, Full Circle shall mail one Certificate to each address appearing on the Settlement Class List described in Section 2.4.  The Settlement Administrator shall oversee this mailing.  Members of the Settlement Class are not required to complete a claim form in order to receive a Certificate.

(c)      The Certificates will have no value whatsoever unless and until the Effective Date occurs.

(d)      The Certificates will have no value whatsoever for any member of the Settlement Class who has been properly excluded pursuant to Section 5.1.

**2.3      Settlement Certificate Terms**

In the event that Final Approval is granted and the Effective Date occurs, the Certificates may be redeemed in accordance with the terms and conditions set forth in this Section 2.3.

(a)      Each Certificate may be redeemed <u>either</u> for the Certificate Goods/Services Amount in accordance with Section 2.3(b) or the Certificate Cash Amount in accordance with Section 2.3(c).  Each Certificate may be transferred one time only.  No Person may redeem more than one Certificate, except as expressly set forth in Section 9 of this Agreement.

(b)      The Certificate may be redeemed for goods and/or services with a price equal to or less than the Certificate Goods/Services Amount according and subject to the following conditions:

     i.     The Certificate may be redeemed towards any goods and/or services irrespective of whether the price of the goods and/or services purchased is greater or less than the Certificate Goods/Services Amount;

     ii.     The Certificate may be used only in a single visit, irrespective of whether the price of the goods and/or services purchased is less than the Certificate Goods/Services Amount;

     iii.     A person redeeming a Certificate for goods and/or services whose total price is less than the Certificate Goods/Services Amount is not entitled to any cash payment or credit for the unredeemed portion of the Certificate;

     iv.     A person redeeming a Certificate for goods and/or services whose total price is greater than the Certificate Goods/Services Amount must pay the difference between the Certificate Goods/Services Amount and the total price at the time the goods and/or services are rendered and in accordance with Heartland's terms;

     v.     The Certificate may only be redeemed at Heartland-owned Jiffy Lube stores;

vi.       The Certificate shall include both a toll-free telephone number and a website providing the location of Heartland-owned Jiffy Lube stores;

vii.      The Certificate shall state that it may be redeemed for the following goods or services, inclusive of any sales tax, disposal fees, or service-related costs: Antifreeze Top Off Service, PCV Valve Replacement, Radiator Cap Replacement, Mini Light Bulb Replacement, and Aquapel Windshield Treatment.

viii.    The Certificate may not be combined with any Jiffy Lube offer, promotion, or other discount, except that the Certificate may be redeemed in connection with Jiffy Lube's "Early Bird" oil change promotional offers at participating stores during such times that the Early Bird promotional offer is generally available to customers; and

ix.       The Certificate may only be redeemed for goods and/or services as described herein within eighteen (18) months of the Effective Date. On the date that is eighteen (18) months after the Effective Date, the Certificates shall expire and shall no longer be redeemable for the Certificate Goods/Services Amount.

(c)      During the period beginning eighteen (18) months after the Effective Date and ending ninety (90) days thereafter, in the event a Certificate is not redeemed for the goods and/or services as described in Section 2.3(b), the Certificate may, at the Certificate holder's election, be redeemed for the Certificate Cash Amount according and subject to the following conditions:

i.       In order to receive the Certificate Cash Amount, the Certificate holder must redeem the Certificate by mail or on-line as described herein.  To redeem the Certificate by mail, the Certificate holder must complete the Certificate in its entirety, including specifying the Certificate holder's mailing address, and mail the Certificate to the address indicated on the Certificate such that it is postmarked during the period beginning eighteen (18) months after the Effective Date and ending ninety (90) days thereafter.  To redeem the Certificate on-line, the Certificate holder must complete an on-line form at the website indicated on the Certificate, including identifying the unique Certificate number of the Certificate that is to be redeemed and the Certificate holder's mailing address, during the period beginning eighteen (18) months after the Effective Date and ending ninety (90) days thereafter.

ii.      For any Certificate properly redeemed for the Certificate Cash Amount under this Section 2.3(c) and not rejected as fraudulent under this Section 2.3(c), Heartland shall cause a check for the Certificate Cash

Amount to be mailed to the address specified by the Certificate holder within thirty (30) days of the date the Certificate is received.

iii.   Heartland shall have no obligation to send any cash payment on account of any Certificate (A) that is postmarked either before or after the period beginning eighteen (18) months after the Effective Date and ending ninety (90) days thereafter; (B) to a Person that has already redeemed a Certificate; (C) to an address to which Heartland has already sent a cash payment pursuant to a Certificate; or (D) which is rejected as fraudulent pursuant to this Section 2.3(c).

iv.   Full Circle shall employ reasonable procedures to screen Certificates submitted for redemption of the Certificate Cash Amount pursuant to this Section 2.3(c) for abuse or fraud and shall not makes any payments where there is evidence of abuse or fraud.  Full Circle shall also reject all Certificates submitted for the Certificate Cash Amount that do not contain all requested information necessary to screen the claim for fraud or abuse.

v.   Upon reasonable notice, Full Circle shall make available for inspection by Class Counsel and Heartland Counsel all Certificates submitted for redemption of the Certificate Cash Amount and any supporting documentation received by the Settlement Administrator.

vi.   Both Heartland Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of any Certificates submitted for cash redemption first by consulting via telephone and if no agreement is reached, then by submitting a written objection to both the Settlement Administrator and opposing counsel stating the reasons for the challenge.  Opposing counsel may respond to any such challenge in writing within fifteen (15) days.  The Settlement Administrator shall follow any agreed-to decisions of Heartland Counsel and Class Counsel.  To the extent Heartland Counsel and Class Counsel are not able to agree on the disposition of a challenge, the Settlement Administrator shall make the final determination, which shall not be subject to further review.

**2.4     Settlement Class List**.

(a)     The Settlement Class List has been created as follows:

i.   Heartland provided a list of cellular telephone numbers that, to the best of Heartland's knowledge and belief, contains every cellular telephone number to which the Text Message was sent.

EXECUTION COPY

ii.     Where Heartland had such information in its possession, custody, or control, Heartland also provided the full names and U.S. mailing addresses associated with such cellular telephone numbers in Heartland's records.

iii.    For every cellular telephone number for which Heartland had an associated full name and U.S. mailing address in its records, Full Circle has confirmed that such U.S. mailing address is valid.

iv.     For every cellular telephone number for which Heartland did not have an associated full name and valid U.S. mailing address in its records, Full Circle has performed a "Reverse Telephone Lookup" in an effort to locate the full names and U.S. mailing address associated with such cellular telephone numbers.  As used herein, the term "Reverse Telephone Lookup" means appending addresses to telephone numbers through matching other common links between the text file and a master customer database.

v.      Full Circle has also compared the Settlement Class List with the National Post Office Database to confirm that such addresses remain valid.

(b)     The Parties make the following representations and warranties regarding the Settlement Class List:

i.      Heartland represents that, in its view, the Settlement Class List represents the best information reasonably available to it regarding the names and mailing addresses of the members of the Settlement Class.

ii.     Full Circle represents that, in its view, the Settlement Class List represents the best information reasonably available to it regarding the names and mailing addresses of the members of the Settlement Class.

iii.    Class Counsel represents that it has discussed the manner in which the Settlement Class List was assembled with Heartland and that, in the view of Class Counsel, the Settlement Class List represents the best information reasonably available to them regarding the names and mailing addresses of the members of the Settlement Class.

iv.     TextMarks represents that it has discussed the manner in which the Settlement Class List was prepared with Heartland and that, in TextMarks' view, the Settlement Class List represents the best information reasonably available to TextMarks regarding the cellular telephone numbers to which the Text Message was sent.

> v.    The Settlement Administrator is able to accept the foregoing representations that the Settlement Class List provided to it represents the best reasonable efforts of Heartland and TextMarks, and that the Settlement Administrator is under no obligation to audit the list or independently verify or modify the Settlement Class List unless otherwise described herein.

(c)     A Person who believes that he, she or it is a member of the Settlement Class entitled to a Certificate but who (i) does not receive a Certificate with the direct mail notice of this Settlement pursuant to Section 4.3(a) and/or (ii) otherwise believes that he, she or it has not been included on the Settlement Class List may call the Settlement Administrator toll-free to confirm whether he, she or it is on the Settlement Class List.  If any Person provides the Settlement Administrator with proof that he, she or it owns a cellular telephone number that appears on the Settlement Class List but no Certificate was sent on account of such number, then the Settlement Administrator shall cause a Certificate to be sent to such Person.  If such Person is not on the Settlement Class List, then he, she or it may seek to be added to the Settlement Class List by providing proof to the Settlement Administrator that he, she or it received the Text Message, such as a cellular phone bill showing receipt of a text message on or about April 21, 2011 from SMS code "41411" or "72345."  If the Settlement Administrator is satisfied in its sole discretion that such Person received the Text Message, the Settlement Administrator shall cause a Certificate to be sent to such Person and such Person shall be added to the Settlement Class List for all purposes, including for the purpose of calculating the Certificate Goods/Services Amount and the Certificate Cash Amount.

3.    **RELEASES**.

3.1     Each of the Releasing Parties hereby releases and forever discharges the Released Parties from the Released Claims.

3.2     In addition to the other releases provided for in this Agreement, Defendants, on behalf of themselves and their respective present, past, or future predecessors, successors, assigns, parent entities, subsidiaries, franchises, affiliates, directors, officers, employees, and agents, hereby release and forever discharge each other from any and all claims, demands, liabilities, duties, rights, obligations, or causes of action whatsoever, including Unknown Claims, related in any way to the Action or the Text Message, including without limitation claims for defense, indemnification, contribution, comparative fault, reimbursement, or offset.

4.    **NOTICE TO THE CLASS**.

4.1     No later than twenty-one (21) days after the entry of Preliminary Approval, the Settlement Administrator shall cause Notice describing the Fairness Hearing and the terms of the compromise embodied in this Settlement Agreement to be disseminated to the Settlement Class as provided herein.  Such Notice shall comport with Due Process, Rule 23, and be effectuated according to the Notice Plan described herein.

4.2     The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms as

described in with Section 5 of this Agreement.

4.3     The Notice Plan, developed by the Parties in consultation with the Settlement Administrator, shall include:

(a)     *Direct Mail Notice*.  Full Circle shall mail the Mailed Notice to all addresses on the Settlement Class List within twenty-one (21) days of Preliminary Approval. The Settlement Administrator shall oversee such mailing.

(b)     *Internet Publication Notice.* Within ten (10) days of Preliminary Approval, the Settlement Administrator shall confirm that Notice has been provided on a website at www.HeartlandTextSettlement.com.  The Notice on the Website shall be substantially in the form of Exhibit C hereto.  Heartland and TextMarks shall also provide a link to www.HeartlandTextSettlement.com on their respective websites.  The website will also be accessible at https://heartland.jiffylube.com/textmessagesettlement.

(c)     *Toll-Free Telephone Number*.  Within ten (10) days of Preliminary Approval, the Settlement Administrator shall confirm the establishment of a toll-free telephone number that will include a recorded message of Exhibit D.

(d)     *Store Display*.  Within twenty-one (21) days of Preliminary Approval, Heartland shall cause a sign substantially in the form of Exhibit D hereto to be placed in each of its Jiffy Lube franchises, directing consumers to the settlement website described in Section 4.3(b) and the toll-free telephone number described in Section 4.3(c) for further information regarding the Settlement.

(e)     *CAFA Notice.*  Defendants shall comply with the requirements of 28 U.S.C. § 1715.

## 5     **OBJECTIONS AND EXCLUSIONS**.

5.1     The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms.

5.2     Any Settlement Class Member who intends to object to this Settlement must file his, her, or its objection with the Court and send a copy of the same to Class Counsel, Heartland Counsel, and TextMarks Counsel on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  The objection must include the objecting Settlement Class Member's name and address; state that he or she is a Settlement Class Member and provide the cellular telephone number that received the Text Message; include all arguments, citations, and evidence supporting the objection (including copies of any documents relied on); and state whether he or she intends to appear at the Fairness Hearing with or without counsel.  Any objection made by a Settlement Class Member represented by counsel must be filed through the Court's CM/ECF system.  Any Settlement Class Member who fails to timely object in accordance with this Section 5.1 and as detailed in the Notice shall not be permitted to object to this Settlement at the Fairness Hearing, shall be foreclosed from seeking any review of this

Settlement by appeal or other means, and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or in other action or proceeding.

      5.3     A member of the Settlement Class may request to be excluded from the Settlement Class.  In order to exercise the right to be excluded, a member of the Settlement Class must send a written request for exclusion postmarked on or before the Objection/Exclusion Deadline to the Settlement Administrator providing his or her name and address; the cellular telephone number on which the Text Message was allegedly received; the unique Certificate number of the Certificate the member of the Settlement Class received (unless the member of the Settlement Class did not receive a Certificate); and a statement that he or she wishes to be excluded from the Settlement Class.  The Settlement Administrator shall promptly forward a copy of any request for exclusion to Class Counsel, Heartland Counsel, and TextMarks Counsel.  A request for exclusion must be personally signed by the member of the Settlement Class requesting exclusion and may not request exclusion of more than one member of the Settlement Class.  A request to be excluded that does not comply with these requirements, that does not include all of the foregoing information, that is not sent to the Settlement Administrator, or that is not postmarked on or before the Objection/Exclusion Deadline shall be invalid, and the member of Settlement Class serving such a request shall be a member of the Settlement Class and shall be bound as a Settlement Class Member by the Settlement, if approved.  A member of the Settlement Class who has properly exercised his or her right to be excluded from the Settlement Class shall not: (1) be entitled to a Certificate; (2) be bound by Final Approval; (3) be entitled to relief under this Agreement; (4) gain any rights by virtue of this Agreement; or (5) be entitled to object to any aspect of this Agreement.

## 6      **SETTLEMENT ADMINISTRATION**.

      6.1     The Settlement Administrator shall oversee the administration of the Notice Plan, the distribution of the Certificates, and the processing of any Certificates submitted for conversion to cash pursuant to Section 2.3(c) in a rational, responsive, cost-effective, and timely manner.  Full Circle and the Settlement Administrator shall each maintain reasonably detailed records of their activities under this Settlement Agreement.  Full Circle and the Settlement Administrator shall maintain all such records as are required by applicable law in accordance with their normal business practices, and such records will be made available to Class Counsel, Heartland Counsel, and TextMarks Counsel upon reasonable request.  Full Circle and the Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  Full Circle and the Settlement Administrator shall provide Class Counsel, Heartland Counsel, and TextMarks Counsel with information concerning Notice, administration, and implementation of the Settlement Agreement.  The Settlement Administrator, with cooperation with Full Circle, shall prepare and provide declarations to be presented to the Court regarding the Notice Plan's satisfaction of the requirements of Due Process and Rule 23 to extent that it is willing to provide such a declaration consistent with the terms of the Settlement Agreement.  Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.

7       **TERMINATION OF SETTLEMENT**.

7.1      Either Plaintiffs in this Action, acting unanimously on behalf of the Settlement Class, or Defendants shall have the right to terminate this Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within ten (10) days of any of the following events: (1) the Court's refusal to grant or order Preliminary Approval of this Settlement in any material respect, other than the form, type, or amount of the consideration payable to Class Counsel on account of attorneys' fees and expenses; (2) the Court's refusal to grant or order Final Approval of this Settlement in any material respect, other than the form, type, or amount of the consideration payable to Class Counsel on account of attorneys' fees and expenses; or (3) the order granting Final Approval is modified or reversed in any material respect by the Court of Appeals or the Supreme Court of the United States of America, other than the form, type, or amount of the consideration payable to Class Counsel on account of attorneys' fees and expenses.

7.2      If prior to the Fairness Hearing, more than two hundred fifty (250) Settlement Class Members have timely requested exclusion from the Settlement Class in accordance with Section 5 of this Agreement, Heartland shall have, in its sole and absolute discretion, the option to terminate this Agreement.  Heartland may terminate the Agreement by serving written notice of termination on the Court and Class Counsel by hand delivery or overnight courier within ten (10) business days after learning that more than two hundred fifty (250) requests for exclusion have been timely filed.

7.3      In the event this Agreement is terminated in accordance with this Section 6, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement.

8       **PRELIMINARY AND FINAL APPROVAL**.

8.1      Promptly after execution of this Agreement, Class Counsel, Heartland Counsel, and TextMarks Counsel shall jointly submit this Agreement, together with all of the exhibits attached hereto, to the Court, and Class Counsel shall move the Court for Preliminary Approval.

8.2      No earlier than ninety (90) days after Notice is given pursuant to Section 4, the Parties shall jointly request Final Approval from the Court.  The order granting Final Approval shall:

(a)      Find that the Court has personal jurisdiction over all members of the Settlement Class and that the Court has subject matter jurisdiction to approve this Settlement, including all exhibits attached hereto;

(b)      Approve the Settlement as fair, reasonable, adequate, and in the best interest of the Settlement Class;

(c)     Direct the Parties, Class Counsel, Heartland Counsel, and TextMarks Counsel to implement the Settlement according to its terms and provisions;

(d)     Declare the Settlement to be binding on, and have *res judicata* and preclusive effect, on all pending and future lawsuits or other proceedings maintained by or on behalf of all other members of the Settlement Class, as well as their heirs, executors, and administrators, successors, and assigns;

(e)     Find that the Notice and the Notice Plan implemented pursuant to this Agreement: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the proposed Agreement, and their right to appear at the Fairness Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the rules of the Court;

(f)     Find that Plaintiffs and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

(g)     Dismiss the Action, including all the claims asserted, on the merits and with prejudice against the Defendants, and without fees or costs to any of the Parties, except as provided in this Agreement;

(h)     Enter a permanent injunction enjoining Heartland and TextMarks from sending certain marketing text messages as described in Section 2.1 above.

(i)     Incorporate the Releases, and make such Releases effective as of the date of Final Approval;

(j)     Provide that neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement,

    a.  is, may be deemed, or shall be used, offered, or received against Defendants as an admission, concession, or evidence of the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties;

    b.  is, may be deemed, or shall be used, offered, or received against Plaintiffs or the Settlement Class as an admission, concession, or evidence of the infirmity or strength of any claims raised in the Action, the trust or falsity of any fact alleged by Heartland or TextMarks, or

the availability or lack of availability of meritorious defenses to the claims raised in the Action;

c. is, may be deemed, or shall be construed against Plaintiffs and the Settlement Class or against Defendants as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than, or greater than that amount that could have or would have been recovered after trial;

d. is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Settlement Class or against Defendants that any of Plaintiffs' claims are with or without merit and that damages recoverable in the Action would have exceeded or would have been less than any particular amount; or

e. is, may be deemed, or shall be used, offered, or received against Defendants as an admission or concession with respect to any liability, negligence, fault, or wrongdoing as against any Parties to the Agreement in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

(k)     Authorize the Parties, without further approval of the Court, to agree to adopt amendments, modifications, and expansions of the Agreement and all related documents, including all exhibits, as shall be consistent in all material respects with the Final Approval, and as do not limit the rights of the members of the Settlement Class, where all Parties agree;

(l)     Without affecting the finality of the order of Final Approval for purposes of appeal, set forth that the Court shall retain jurisdiction as to all matters relating to administration, enforcement, interpretation, and execution of the Agreement and the Final Approval, and for any other necessary purpose; and

(m)     Incorporate any additional provisions as the Court deems necessary and just.

## 9     CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES; INCENTIVE AWARDS.

9.1     The Parties agree that Class Counsel is entitled to reasonable attorneys' fees, expenses, and costs.  Subject to the Court's approval, the Parties have agreed that such reasonable fees, expenses, and costs shall be the provision of up to 366,230 Certificates having an aggregate Certificate Goods/Services Amount of $6,333,333.33 and an aggregate Certificate Cash Amount of $4,750,000 to Class Counsel within thirty (30) days of the Effective Date.  In the event that, due to rounding differences, the number of Certificates required to yield an aggregate Certificate Goods/Services Amount of $6,333,333.33 is not equal to the number of Certificates required to yield an aggregate Certificate Cash Amount of $4,750,000, Class Counsel shall receive Certificates yielding an aggregate Certificate Cash Amount of $4,750,000.

9.2     The Certificates that are given to Class Counsel under Section 9.1 shall be non-transferable, except that Class Counsel and Additional Counsel may freely transfer them amongst each other.  The condition that no person may redeem more than one Certificate shall not apply with respect to the Certificates provided to Class Counsel, so long as they are redeemed by Class Counsel or Additional Counsel.  Class Counsel agrees that it shall not seek consideration greater than the value of the Certificates set out in Section 9.1 on account of their attorneys' fees, costs, and expenses, and Defendants agree that such consideration is reasonable and that they will not object to or otherwise challenge Class Counsel receiving this consideration on account of their attorneys' fees and expenses.

9.3      Plaintiffs and Class Counsel agree that upon Heartland's payment and Class Counsel's receipt of the consideration described in Section 9.1, (i) Defendants will forever and finally have satisfied any and all obligations to Class Counsel and Additional Counsel concerning payment of attorneys' fees, costs, and expenses in the Actions and (ii) the Released Parties will forever and finally be absolved, released, and discharged of any liability whatsoever to Plaintiffs, to Class Counsel, to Additional Counsel, and to any other counsel performing legal work on behalf of any plaintiff and any Settlement Class Member in the Actions, and any other Person, concerning attorneys' fees, costs, and expenses in the Action.

9.4     Defendants shall have no responsibility for, and no liability whatsoever with respect to, any allocation of the consideration described in Section 9.1 among Class Counsel, Additional Counsel, any other counsel performing any legal work for any plaintiff in the Actions, and/or any other Person who may assert any claim to attorneys' fees and expenses in connection with the Actions.

9.5     In addition to any award to which they may be entitled under the Settlement Agreement, and in recognition of their efforts on behalf of the Settlement Class by serving as the Class Representatives in this litigation, Heartland shall, subject to the approval of the Court, pay each Class Representative an incentive award in the amount of five thousand dollars ($5,000.00) or its equivalent in Certificates (up to 386), at the election of the Class Representative.  If any Class Representative does not make such election on or before the Effective Date, the Class Representative shall be deemed to have elected to receive up to 386 Certificates.  Heartland agrees that such an amount is reasonable and that it shall not oppose such award, directly or indirectly.  Heartland shall provide these funds or Certificates to Class Counsel within thirty (30) days of the Effective Date, and Class Counsel shall then provide these funds to the Class Representatives.  Should a Class Representative elect to receive Certificates rather than cash, the condition that no Person may redeem more than one Certificate shall not apply to the Certificates provided to the Class Representatives.

9.6     The consideration described in this Section 9 is severable from the remainder of this Settlement Agreement.  In the event the Court does not approve the consideration to be provided to Class Counsel and/or the Class Representatives, in whole or in part, the remainder of this Settlement Agreement shall remain binding on all Parties.

**10**      **MISCELLANEOUS PROVISIONS**.

10.1     *Intent to Consummate*.  The Parties (a) acknowledge that it is their intent to consummate this Agreement and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.  Class Counsel, Heartland Counsel, and TextMarks Counsel agree to cooperate with one another in seeking both Preliminary and Final Approval from the Court, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain Final Approval of this Settlement.

10.2     *Final and Complete Resolution*.  The Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Action and the claims that are released pursuant to the Releases.

10.3     *Admissions or Concessions*.  Whether or not the Effective Date occurs, and whether or not this Agreement is terminated, neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement,

(a)      is, may be deemed, or shall be used, offered, or received against Defendants as an admission, concession, or evidence of the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties;

(b)      is, may be deemed, or shall be used, offered, or received against Plaintiffs or the Settlement Class as an admission, concession, or evidence of the infirmity or strength of any claims raised in the Action, the trust or falsity of any fact alleged by Heartland or TextMarks, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(c)      is, may be deemed, or shall be construed against Plaintiffs and the Settlement Class or against Defendants as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than, or greater than that amount that could have or would have been recovered after trial;

(d)      is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Settlement Class or against Defendants that any of Plaintiffs' claims are with or without merit and that damages recoverable in the Action would have exceeded or would have been less than any particular amount; or

(e)      is, may be deemed, or shall be used, offered, or received against Defendants as an admission or concession with respect to any liability, negligence, fault, or

wrongdoing as against any Parties to the Agreement in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

(f)     Notwithstanding the foregoing, the Settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  Furthermore, if this Agreement is approved by the Court, any party or any of the Released Parties may file this Agreement and/or the Final Approval in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4     *Headings*.  The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.5     *Waiver*.  The waiver by one party of any breach of this Agreement by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.6     *Exhibits*.  All of the exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

10.7     *Entire Agreement*.  This Agreement and its exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and they supersede all prior negotiations, agreements, arrangement, and undertakings with respect to the matters set forth herein.  No representations, warranties, or inducements have been made to any party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

10.8     *Amendment and Modification*.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9     *Execution*.  This Agreement may be executed in any number of counterparts.  This Agreement is not binding, and shall be of no force and effect whatsoever, unless and until it is executed by all Parties hereto.

10.10     *Costs*.  Other than as provided herein, each Party shall bear its own costs for the Action.

10.11     *Assignment*.  Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person.

10.12     *Authority*.  Each Person executing this Agreement warrants and represents that such Person has the fully authority to do so and has the authority to take appropriate action

required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.13   *Successors and Assigns*.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

10.14   *Court's Jurisdiction*.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

10.15   *Governing Law*.  This Agreement shall be governed by and construed under the laws of the State of California, without reference to any choice-of-law rules thereof that would make the laws of any other jurisdiction applicable to this Agreement.

10.16   *Jointly Drafted*.  This Agreement shall be treated as jointly drafted and will not be construed against any Party as the drafter.  Any uncertainty or ambiguity that may exist in this Agreement shall not be interpreted against any Party as a result of the drafting of the Agreement.

10.17   *Notice to Parties*.  Where this Agreement requires notice to the Parties, such notice must be sent to:

(a)   For Plaintiffs and for Class Counsel:

Jay Edelson of Edelson McGuire LLC, 350 N. LaSalle, 13th Floor, Chicago, Illinois 60654.

(b)   For Heartland:

Brett Ponton, President and Chief Executive Officer, Heartland Automotive Services, Inc., 105 Decker Court, Suite 900, Irving TX 75062,

Glenn M. Kurtz of White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036,

and

Kim Haviv of White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036.

(c)   For TextMarks:

Brian D. Buckley of Fenwick & West LLP, 1191 Second Avenue, 10th Floor, Seattle WA 98101.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____          _____
                                        JOSEPH CROWL, Plaintiff


DATED: _____          _____
                                        LAWRENCE CUSHNIE, Plaintiff


DATED: _____          _____
                                        TRAMY DUONG, Plaintiff


DATED: _____          _____
                                        RENE HEUSCHER, Plaintiff


DATED: _____          _____
                                        ED KOELLER, Plaintiff


DATED: _____          _____
                                        DAWN SOUDER, Plaintiff


DATED: _____          _____
                                        JACOB BARR, Plaintiff


DATED: _____          HEARTLAND AUTOMOTIVE
                                        SERVICES, INC.


                                        _____
                                        Brett Ponton, Chief Executive Officer

EXECUTION COPY

DATED: _____          TEXTMARKS, INC.


_____
Ariel Poler, Chief Executive Officer


DATED: _____          FULL CIRCLE SOLUTIONS, INC.


_____
Mike Walther, President



APPROVED AS TO FORM AND CONTENT


DATED: _____          EDELSON McGUIRE, LLC


_____
Jay Edelson, Attorneys for Plaintiffs

DATED: _____          SMITH & McMORROW, P.C.


_____
Michael J. McMorrow, Attorneys for
Plaintiffs

DATED: _____          LAW OFFICES OF DOUGLAS J.
CAMPION


_____
Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____          WHITE & CASE LLP


_____
Glenn M. Kurtz, Attorneys for Heartland

EXECUTION COPY

DATED: _____          FENWICK & WEST LLP


                                            _____
                                            Brian D. Buckley, Attorneys for TextMarks

EXECUTION COPY

DATED: _____     TEXTMARKS, INC.

_____
Ariel Poler, Chief Executive Officer

DATED: _____     FULL CIRCLE SOLUTIONS, INC.

_____
Mike Walther, President

APPROVED AS TO FORM AND CONTENT

DATED: _____     EDELSON McGUIRE, LLC

_____
Jay Edelson, Attorneys for Plaintiffs

DATED: _____     SMITH & McMORROW, P.C.

_____
Michael J. McMorrow, Attorneys for
Plaintiffs

DATED: _____     LAW OFFICES OF DOUGLAS J.
CAMPION

_____
Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____     WHITE & CASE LLP

_____
Glenn M. Kurtz, Attorneys for Heartland

EXECUTION COPY

DATED: _____          TEXTMARKS, INC.


_____
Ariel Poler, Chief Executive Officer


DATED: _____          FULL CIRCLE SOLUTIONS, INC.


_____
Mike Walther, President



APPROVED AS TO FORM AND CONTENT


DATED: _____          EDELSON McGUIRE, LLC


_____
Jay Edelson, Attorneys for Plaintiffs

DATED: _8 - 1 - 2012_____      SMITH & McMORROW, P.C.


_____
Michael J. McMorrow, Attorneys for
Plaintiffs

DATED: _____          LAW OFFICES OF DOUGLAS J.
                                         CAMPION


_____
Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____          WHITE & CASE LLP


_____
Glenn M. Kurtz, Attorneys for Heartland

EXECUTION COPY

DATED: _____          TEXTMARKS, INC.

                                  _____
                                  Ariel Poler, Chief Executive Officer

DATED: _____          FULL CIRCLE SOLUTIONS, INC.

                                  _____
                                  Mike Walther, President

APPROVED AS TO FORM AND CONTENT

DATED: _____          EDELSON McGUIRE, LLC

                                  _____
                                  Jay Edelson, Attorneys for Plaintiffs

DATED: _____          SMITH & McMORROW, P.C.

                                  _____
                                  Michael J. McMorrow, Attorneys for
                                  Plaintiffs

DATED: *Aug. 1, 2012*             LAW OFFICES OF DOUGLAS J.
                                  CAMPION

                                  _____
                                  Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____          WHITE & CASE LLP

                                  _____
                                  Glenn M. Kurtz, Attorneys for Heartland

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____    _____
                                  JOSEPH CROWL, Plaintiff


DATED: _____    _____
                                  LAWRENCE CUSHNIE, Plaintiff


DATED: _____    _____
                                  TRAMY DUONG, Plaintiff


DATED: _____    _____
                                  RENE HEUSCHER, Plaintiff


DATED: _____    _____
                                  ED KOELLER, Plaintiff


DATED: _____    _____
                                  DAWN SOUDER, Plaintiff


DATED: _____    _____
                                  JACOB BARR, Plaintiff


DATED: _____    HEARTLAND AUTOMOTIVE
                                  SERVICES, INC.

                                  _____
                                  Brett Ponton, Chief Executive Officer

EXECUTION COPY

DATED: __7/31/12__

TEXTMARKS, INC.

_____
Ariel Poler, Chief Executive Officer

DATED: _____

FULL CIRCLE SOLUTIONS, INC.

_____
Mike Walther, President

APPROVED AS TO FORM AND CONTENT

DATED: _____

EDELSON McGUIRE, LLC

_____
Jay Edelson, Attorneys for Plaintiffs

DATED: _____

SMITH & McMORROW, P.C.

_____
Michael J. McMorrow, Attorneys for Plaintiffs

DATED: _____

LAW OFFICES OF DOUGLAS J. CAMPION

_____
Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____

WHITE & CASE LLP

_____
Glenn M. Kurtz, Attorneys for Heartland

EXECUTION COPY

DATED: _____          TEXTMARKS, INC.


                                    _____
                                    Ariel Poler, Chief Executive Officer


DATED: _____          FULL CIRCLE SOLUTIONS, INC.

                                    _____
                                    Mike Walther, President



APPROVED AS TO FORM AND CONTENT


DATED: _____          EDELSON McGUIRE, LLC


                                    _____
                                    Jay Edelson, Attorneys for Plaintiffs

DATED: _____          SMITH & McMORROW, P.C.


                                    _____
                                    Michael J. McMorrow, Attorneys for
                                    Plaintiffs

DATED: _____          LAW OFFICES OF DOUGLAS J.
                                    CAMPION


                                    _____
                                    Douglas J. Campion, Attorneys for Plaintiffs

DATED: _____          WHITE & CASE LLP


                                    _____
                                    Glenn M. Kurtz, Attorneys for Heartland

EXECUTION COPY

DATED: _____         TEXTMARKS, INC.


                                        _____
                                        Ariel Poler, Chief Executive Officer

DATED: _____         FULL CIRCLE SOLUTIONS, INC.

                                        _____
                                        Mike Walther, President


APPROVED AS TO FORM AND CONTENT


DATED: _____         EDELSON McGUIRE, LLC


                                        _____
                                        Jay Edelson, Attorneys for Plaintiffs

DATED: _____         SMITH & McMORROW, P.C.


                                        _____
                                        Michael J. McMorrow, Attorneys for
                                        Plaintiffs

DATED: _____         LAW OFFICES OF DOUGLAS J.
                                        CAMPION


                                        _____
                                        Douglas J. Campion, Attorneys for Plaintiffs

DATED: ___8/1/12_____           WHITE & CASE LLP

                                        _____
                                        Glenn M. Kurtz, Attorneys for Heartland

DATED:   7/31/12

FENWICK & WEST LLP

Brian D. Buckley, Attorneys for TextMarks

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

_____
JOSEPH CROWL, Plaintiff

DATED:  7/31/2012

_____
LAWRENCE CUSHNIE, Plaintiff

DATED: _____

_____
TRAMY DUONG, Plaintiff

DATED: _____

_____
RENE HEUSCHER, Plaintiff

DATED: _____

_____
ED KOELLER, Plaintiff

DATED: _____

_____
DAWN SOUDER, Plaintiff

DATED: _____

_____
JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

_____
JOSEPH CROWL, Plaintiff

DATED: _____

_____
LAWRENCE CUSHNIE, Plaintiff

DATED: _____

_____
TRAMY DUONG, Plaintiff

DATED: _____

_____
RENE HEUSCHER, Plaintiff

DATED: _____

_____
ED KOELLER, Plaintiff

DATED: _8/1/12_____

_Dawn M. Souder_____
DAWN SOUDER, Plaintiff

DATED: _____

_____
JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

JOSEPH CROWL, Plaintiff

DATED: _____

LAWRENCE CUSHNIE, Plaintiff

DATED: 7/31/2012

TRAMY DUONG, Plaintiff

DATED: _____

RENE HEUSCHER, Plaintiff

DATED: _____

ED KOELLER, Plaintiff

DATED: _____

DAWN SOUDER, Plaintiff

DATED: _____

JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

Brett Ponton, Chief Executive Officer

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

_____
JOSEPH CROWL, Plaintiff

DATED: _____

_____
LAWRENCE CUSHNIE, Plaintiff

DATED: _____

_____
TRAMY DUONG, Plaintiff

DATED: ___8/1/12___

_____
RENE HEUSCHER, Plaintiff

DATED: _____

_____
ED KOELLER, Plaintiff

DATED: _____

_____
DAWN SOUDER, Plaintiff

DATED: _____

_____
JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

_____
JOSEPH CROWL, Plaintiff

DATED: _____

_____
LAWRENCE CUSHNIE, Plaintiff

DATED: _____

_____
TRAMY DUONG, Plaintiff

DATED: _____

_____
RENE HEUSCHER, Plaintiff

DATED: _____

_____
ED KOELLER, Plaintiff

DATED: _____

_____
DAWN SOUDER, Plaintiff

DATED: 07/31/2012

_____
JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _7/31/12_

_____
JOSEPH CROWL, Plaintiff

DATED: _____

_____
LAWRENCE CUSHNIE, Plaintiff

DATED: _____

_____
TRAMY DUONG, Plaintiff

DATED: _____

_____
RENE HEUSCHER, Plaintiff

DATED: _____

_____
ED KOELLER, Plaintiff

DATED: _____

_____
DAWN SOUDER, Plaintiff

DATED: _____

_____
JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the dates set forth below.

DATED: _____

JOSEPH CROWL, Plaintiff

DATED: _____

LAWRENCE CUSHNIE, Plaintiff

DATED: _____

TRAMY DUONG, Plaintiff

DATED: _____

RENE HEUSCHER, Plaintiff

DATED: 08/01/2012

_~P~ Koeer_
ED KOELLER, Plaintiff

DATED: _____

DAWN SOUDER, Plaintiff

DATED: _____

JACOB BARR, Plaintiff

DATED: _____

HEARTLAND AUTOMOTIVE
SERVICES, INC.

_____
Brett Ponton, Chief Executive Officer

# Exhibit A

## Certificate

# - KEEP THIS CERTIFICATE. IT WILL HAVE VALUE UPON COURT APPROVAL OF CLASS ACTION -

This Certificate may be exchanged for either goods and/or services or a cash payment subject to the following terms and conditions only if a Class Action Settlement in a case called In re: *Jiffy Lube International, Inc. Text Spam Litigation* is approved and you have not excluded yourself from this Settlement. See the reverse side of this Certificate for a summary of the lawsuit and the Settlement.

## GOODS AND/OR SERVICES

This Certificate may be used at participating Heartland Jiffy Lube locations for 18 months after the Settlement becomes effective, for the goods/services listed below free of charge or for a Certificate Goods/Services Amount of approximately **$17.29** subject to the following conditions:

- You can exchange this Certificate for the following free of any charge: PCV Valve Replacement, Radiator Cap Replacement, Light Bulb Replacement, and Aquapel Windshield Treatment;
- You can use this Certificate towards goods and/or services that are greater or less than the Certificate Goods/Services Amount;
- The Certificate may be used only in a single visit;
- If you use the Certificate for goods and/or services that cost less than the Certificate Goods/Services Amount you do not get any cash back;
- If you use the Certificate for goods and/or services whose total price is greater than the Certificate Goods/Services Amount, you have to pay the difference at the time the goods and/or services are rendered;
- The Certificate may only be redeemed at Heartland-owned Jiffy Lube stores; and
- The Certificate may not be combined with any Jiffy Lube offer, promotion, or other discount, except that the Certificate may be redeemed in connection with Jiffy Lube's "Early Bird" oil change promotional offers at participating stores during such times that the Early Bird promotional offer is generally available to customers.

*The fine print:* The dates you can use the Certificate and exact Certificate Goods/Services Amount may change. Check www.HeartlandTextSettlement.com for details. Based on the pricing available at the time this Certificate is mailed, the estimated Certificate Goods/Services Amount will also likely cover the cost of the following additional goods or services, depending on the make and model of your car and the Jiffy Lube store location: Windshield Rock Chip Repair Service, Windshield Repair – 2nd Chip, Wiper Blade Refill/Replace, Registration Renewal, Safety/Brake Check, Safety Check, Motorcycle Inspection, and Emission Inspection.

P-61979

## $ CASH PAYMENT $

If this Certificate is not used for goods and/or services, it may be exchanged for the Certificate Cash Amount of approximately **$12.97** according and subject to the following conditions:

- If you use the Certificate for goods / services, you <u>cannot</u> exchange it for cash.
- The Certificate can be exchanged for cash beginning 18 months after the Settlement becomes effective and ending 90 days thereafter.
- You can exchange this Certificate for cash online at www.HeartlandTextSettlement.com. You will need the Certificate Number printed below. Exchanging on-line is free and quick!
- You can also exchange this Certificate for cash by mail, by filling out the information below and mailing this Certificate to Jiffy Lube Settlement Administrator at [Address].
- The Certificate must be exchanged on-line or postmarked between [date & date].
- The dates you can exchange this Certificate for cash and the exact Certificate Cash Amount may change. Check www.HeartlandTextSettlement.com for details.
- If you correctly follow the instructions when exchanging this Certificate for cash, you will be mailed a check for the Certificate Cash Amount to the address you provide within 30 days of processing.
- You will not be issued a check if you use the Certificate for goods and/or services, if you already exchanged it for cash, if a check has already been sent to the address provided, if you have excluded yourself from the Settlement, or if this Certificate is rejected by the Settlement Administrator as fraudulent.

**CERTIFICATE NO. [X]**

IN RE: JIFFY LUBE INTERNATIONAL, INC. TEXT SPAM LITIGATION

 jiffy lube

# CERTIFICATE

 jiffy lube

IN RE: JIFFY LUBE INTERNATIONAL, INC. TEXT SPAM LITIGATION

To exchange this Certificate for cash by mail, please provide the following information:

NAME: _____

MAILING ADDRESS: _____

CELL PHONE NUMBER: _____

This Certificate may be transferred one time only. No person may redeem more than one Certificate. This Certificate may not be copied or otherwise reproduced. **For more information, including whether the Settlement has been approved, the dates the Certificate can be used for goods/services or exchange for cash, the precise Certificate Goods/Services Amount, the precise Certificate Cash Amount, and for a list of Heartland-owned Jiffy Lube stores, please visit www.HeartlandTextSettlement.com or call [XXX.XXX.XXXX].**

Optional Endorsement
Marc Quality
123 Satisfaction Way
Apt. 345
Anytown, USA 12345-6789

PRSRT STD
U.S. POSTAGE
PAID
MAILED FROM ZIP CODE 32114
Permit No. 647

# Exhibit B

## Mailed Notice

# COURT AUTHORIZED LEGAL NOTICE

**OUR RECORDS SHOW YOU WERE SENT A TEXT MESSAGE ADVERTISING A DISCOUNT ON A JIFFY LUBE OIL CHANGE AND YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION SETTLEMENT.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

A Settlement has been reached in a lawsuit about whether Jiffy Lube franchisee Heartland Automotive Services, Inc. and mobile ad company TextMarks, Inc. sent a text message offering a discount on a Jiffy Lube oil change in April 2011 without consent to do so in violation of the Telephone Consumer Protection Act and similar state laws. Heartland and TextMarks are referred to as the "Defendants."

Your legal rights may be affected whether you act or don't act. Please read this Notice carefully. Visit **www.HeartlandTextSettlement.com** to read the full Notice and the Settlement Agreement.

## Who's Included?

You are receiving this Notice because, according to available records, you are a member of the Settlement Class. You are included if you live in the United States and its Territories and you were sent a particular text message ad in April 2011 offering a discount on a Jiffy Lube oil change.

## What Do You Get?

Included on the reverse side of this Notice is a Certificate. The Certificate can only be used if the Court approves the Settlement and the Settlement becomes effective, so hold on to your Certificate. If the Settlement becomes effective, you may redeem the Certificate in one of two ways. First, the Certificate may be used for goods and/or services at Heartland-owned Jiffy Lube stores for 18 months after the Settlement becomes effective. The Certificate lists some of the items you can get with it cost-free. It can be used toward any higher priced goods /services too. The value of the goods/services you can get will be set by the Court, but it is expected to be approximately $17.29. Second, beginning 18 months after the Settlement is effective and ending 90 days after that, the Certificate may be redeemed for a cash payment that will be set by the Court but that is expected to be approximately $12.97. The exact dates the Certificate can be used or exchanged for cash, and the value of the

Certificates will be posted on www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [XXX.XXX.XXX]. Please consult the Certificate for its full terms and conditions.

The Settlement also requires Defendants to make sure people who wish to receive text messages properly consent.

## What are my Legal Rights and Options?

Unless you choose to exclude yourself, you will be a member of the Settlement Class and, if the Court approves the Settlement, will be bound by the Settlement and all orders and judgments of the Court.

If you do not want to be bound by the Settlement Agreement, you can choose to exclude yourself from the Settlement Class. If you exclude yourself, you will not be able to use the Certificate and you will not be able to object to the Settlement. You will keep your right to sue Defendants and other related entities for claims relating to the text message. To exclude yourself, you must send a written request for exclusion **postmarked no later than [date]** that includes (i) your name and address, (ii) the cellular telephone number on which the text message was allegedly received, (iii) your Certificate number (unless you did not receive a Certificate), and (iv) a statement that you wish to be excluded from the Settlement Class to [Settlement Administrator Address].

You and/or your lawyer have the right to appear before the Court and/or object to the Settlement. Objecting is telling the Court you don't like something about the Settlement. You may object only if you stay in the Settlement Class. To object, you must file a written objection with the Court and send a copy to Class Counsel, Heartland Counsel, and TextMarks Counsel postmarked no later than [Date]. Your objection must (i) include your name and address; (ii) state that you are a Settlement Class Member and provide the cellular telephone number that received the Text Message; (iii) include all arguments, citations, and evidence supporting the objection; and (iv) state whether you intend to appear at the Fairness Hearing (described below).

For complete information on your legal rights and options in this Settlement, including more detailed information on how to exclude yourself from the Settlement Class or to object to the Settlement, please visit www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [XXX.XXX.XXXX].

## Who Represents Me?

The Court has appointed Jay Edelson of Edelson McGuire, LLC and Michael J. McMorrow of Smith & McMorrow, P.C to serve as Lead Class Counsel and Douglas J. Campion to serve as Liaison Class Counsel. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## When Will the Court Consider the Settlement?

The Court will hold a Fairness Hearing to determine the fairness of the Settlement at <time><pm/am> on [date] at Edward J. Schwartz United States Courthouse, Room 5190, 940 Front Street, San Diego, CA 92101 before Judge Jeffrey T. Miller. At that hearing, the Court will hear any objections concerning the fairness of the Settlement that have been properly raised. The hearing may be postponed to a different date without notice. You are not required to come to this hearing.

At the hearing to determine the fairness of the Settlement, Class Counsel will ask the Court to approve a Fee Award of up to 366,230 of the same Certificates given to the Class on account of attorneys' fees and expenses for investigating the facts, litigating the case, and negotiating the Settlement. Class Counsel will also ask the Court to approve an incentive award for each Class Representative of up to 386 Certificates, or their cash equivalent, for their services in helping to bring and settle this case. The Court may award Class Counsel and/or the Class Representatives less than these amounts, and the value of the Certificates will be deducted from the total cash or goods/services value of the Certificates being paid to the Settlement Class.

## How Do I Get More Information?

To read the Settlement Agreement or for more information about the Settlement, please visit www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [XXX.XXX.XXX].

PLEASE DO NOT CONTACT THE COURT ABOUT THIS NOTICE. YOU MAY CALL CLASS COUNSEL AT [XXX.XXX.XXX] OR THE SETTLEMENT ADMINISTRATOR AT [XXX.XXX.XXXX].

By Order of the Court Dated: [date]

P-61979

# Exhibit C

## Internet Publication

**IF YOU WERE SENT A TEXT MESSAGE IN APRIL 2011 OFFERING 45% OFF A JIFFY LUBE SIGNATURE SERVICE® OIL CHANGE, PLEASE READ THIS NOTICE CAREFULLY AS YOUR LEGAL RIGHTS MAY BE AFFECTED BY A CLASS ACTION SETTLEMENT**

*A federal court authorized this Notice.  You are <u>not</u> being sued.  This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit about whether Jiffy Lube franchisee Heartland Automotive Services, Inc. ("Heartland") and mobile ad company TextMarks, Inc. ("TextMarks") sent a text message ad offering a discount on a Jiffy Lube Signature Service® oil change in April 2011 without consent to do so in violation of the Telephone Consumer Protection Act and similar state laws.  Heartland and TextMarks are referred to as the "Defendants."

- You are included in the Settlement if you live in the United States or its Territories and you were sent a text message ad in April 2011 offering a discount on a Jiffy Lube Signature Service® oil change.  The text message ad came from shortened phone number "72345" or "41411."

- Those included in the Settlement will automatically receive a Certificate which, in the event the Court approves the Settlement and the Settlement becomes effective, may be exchanged either for a variety of goods and/or services free of charge at Heartland-owned Jiffy Lube locations <u>or</u> for a cash payment.  If you believe you are included in the Settlement, but did not receive a Certificate in the mail, please call [●].

- Please read this Notice carefully.  Your legal rights may be affected, whether you act or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **EXCLUDE YOURSELF** | You will not be able to use the Certificate mailed to you, but you will retain any rights you currently have to sue the Defendants about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |
| **DO NOTHING** | You will automatically receive a Certificate and will give up your rights to sue the Defendants about the claims in this case. |

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

## BASIC INFORMATION

| **1.  Why was this Notice issued?** |
|---|

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Jeffrey T. Miller of the U.S. District Court for the Southern District of California is overseeing this case. The case is known as *In re Jiffy Lube International, Inc. Text Spam Litigation*, No. 11-md-2261. The persons who sued are called the Plaintiffs. The Defendants are Heartland and TextMarks.

| **2. What is a Class Action?** |
|---|

In a class action, one or more people called Class Representatives (in this case Joseph Crowl, Lawrence Cushnie, Tramy Duong, Rene Heuscher, Edward Koeller, Dawn Souder, and Jacob Barr) sue on behalf of a group or a "class" of people who have similar claims.  After the parties reached an agreement to settle the case, the Court recognized it as a case that should be treated as a class action for settlement purposes.  In a class action, the court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

| **3. What is this Lawsuit about?** |
|---|

This lawsuit claims that text message ads offering a discount on Jiffy Lube oil change services were sent by or on behalf of Heartland and/or TextMarks in April 2011.  The lawsuit claims that Defendants violated the federal Telephone Consumer Protection Act and similar state laws by sending those text messages without the consent of consumers to receive text message ads. Heartland and TextMarks deny that they violated any law, and will vigorously defend the lawsuit if the proposed Settlement is not approved.

The Court has not determined who is right.  Rather, the parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with continuing with the lawsuit.

| **4. Why is there a Settlement?** |
|---|

The Court has not decided whether the Plaintiffs or the Defendants should win the case.  Instead, both sides agreed to a settlement.  That way, they avoid the cost of a trial, and the Settlement Class Members will get compensation now rather than years from now, if at all.

## WHO'S INCLUDED IN THE SETTLEMENT?

| **5. How do I know if I am part of the settlement?** |
|---|

NEWYORK 8565057

The Court has decided that everyone who fits the following description is a member of the Settlement Class:

> All Persons residing in the United States and its Territories who were sent the Text Message in April 2011.

The Text Message was sent from shortened phone number "72345" or "41411" to the cellular telephones of those in the Settlement Class in April 2011 and contained language similar to the following:

> JIFFY LUBE CUSTOMERS 1 TIME OFFER:
> REPLY Y TO JOIN OUR ECLUB FOR 45% OFF A
> SIGNATURE SERVICE OIL CHANGE! STOP TO UNSUB
> MSG&DATA RATES MAY APPLY T&C: JIFFYTOS.COM

Defendants have the names and address of most people in the Settlement Class, and a summary of this Notice and a Certificate will be automatically sent to those persons.

## THE SETTLEMENT BENEFITS

**6. What can I get from the settlement?**

Heartland has agreed to provide each Settlement Class Member with a Certificate.  The Certificate can only be used if the Court approves the Settlement and the Settlement becomes effective, **so hold on to your Certificate**.  If the Court approves the Settlement and the Settlement becomes effective, the Certificate can be redeemed in one of two ways, subject to various terms and conditions.

**Option 1:** For 18 months after the Settlement becomes effective, the Certificate may be redeemed at any Heartland-owned Jiffy Lube store for goods and/or services in a value that will be determined by the Court and that is expected to be approximately $17.29.  In particular, the Certificate may be redeemed for the following goods or services, inclusive of any sales tax, disposal fees, or service-related costs: Antifreeze Top Off Service, PCV Valve Replacement, Radiator Cap Replacement, Mini Light Bulb Replacement, and Aquapel Windshield Treatment. The Certificate may be used in connection with Jiffy Lube's "Early Bird" oil change promotional offers, but not with other offers.  Of course, the Certificate can also be used toward the purchase of any other goods or services offered at any Heartland-owned Jiffy Lube store.

Click here for a list of Heartland Jiffy Lube locations where you can use your Certificate in the event the Court approves the Settlement.  If the Settlement becomes effective on the dates currently scheduled, the Certificate will be valid to use for goods and/or services from [date to date].  If these dates change, updates will be posted on this website.

**Option 2:** During the period beginning 18 months after the Settlement becomes effective and ending ninety (90) days after that, the Certificate may be redeemed for a cash payment that will be determined by the Court and that is expected to be approximately $12.97.  If the Court

NEWYORK 8565057

approves the Settlement, Certificates can be redeemed on-line during this time frame by clicking here or by filing in the information requested on the Certificate and mailing it to [address]

The exact amount of goods/services and cash value cannot be determined at this time because it depends on the approval of the Court.  If the Settlement becomes effective on the dates currently scheduled, the Certificate may be exchanged for cash from [date to date].  If these dates change, updates will be posted on this website. This website and the toll-free settlement hotline ([●]) will be updated if and when the Court gives final approval to the Settlement and will provide the exact value of the Certificates.

***Protection from Future Unauthorized Messages:*** Defendants have agreed to the entry of an injunction prohibiting them from sending text messages to consumers who have not given their prior express consent to receive them in writing, subject to changes in the law.  Additionally, Defendants will be required to maintain all records of such consent for two years.

# HOW TO GET BENEFITS

**7. How do I get a Certificate?**

All members of the Settlement Class whose U.S. mailing addresses could be determined by the Settlement Administrator were sent a postcard summary of this Notice and a Certificate via U.S. mail on or about [notice date].  If you believe you are in the Settlement Class but did not get a Certificate in the mail, you contact the Settlement Administrator at [phone / address] and provide proof that you received the text message covered by this Settlement, such as a cellular phone bill showing receipt of a text message on or about April 21, 2011 from shortened phone number "72345" or "41411."

# REMAINING IN THE SETTLEMENT

**8.  I want to be part of the settlement.  What do I do?**

If you received a postcard with a summary of this Notice in the mail, it included a Certificate and you are a member of the Settlement Class.  You do not need to do anything in order to be a part of the Settlement.  If the Court approves the Settlement and the Settlement becomes effective, you may use the Certificate as described above.

**9.  What am I giving up if I choose to remain in the Settlement Class?**

If the Court approves the Settlement and the Settlement becomes effective, you may use the Certificate as described above, but you give up any right that you may have to sue Heartland, TextMarks, and other related entities listed in Section 1.25 of the Settlement Agreement for claims relating to the text message in the lawsuit.  The specific claims you are giving up against the Defendants are described in Section 1.24 of the Settlement Agreement.  Unless you choose to exclude yourself (*see* Question 10), you are "releasing" the claims regardless of whether you use the Certificate or not.

4

The Settlement Agreement contains a detailed description of the claims you will be giving up if you choose to remain in the Settlement Class.  You may want to consider it before making your decision about participating in the Settlement.  You can see a complete copy of the Settlement Agreement by clicking HERE.  If you have questions, you can talk to Class Counsel for free by calling 1-866-354-3015, or you can, of course, talk to your own lawyer if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| **10.  How do I get out of the Settlement?** |
| --- |

To exclude yourself from the Settlement Agreement, you must send a letter by mail stating that you want to be excluded from the *In re Jiffy Lube Automotive Text Spam Litigation*, Case No. 3:11-MD-02261-JM-JMA, MDL No. 2261 (S.D. Cal.) Settlement Class.  Your letter request to be excluded must also include your name, address, cellular telephone number that received the Text Message, Certificate number (unless you did not receive a Certificate), and your signature.  You cannot exclude anyone but yourself from the Class.  You must mail your letter exclusion request no later than [objection/exclusion deadline] to

[insert Settlement Administrator address]

| **11.  If I don't exclude myself, can I sue Defendants for the same thing later?** |
| --- |

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims being resolved by this Settlement.

| **12.  If I exclude myself, do I still receive benefits from this settlement?** |
| --- |

No.  If you exclude yourself, you will not be able to use the Certificate and you will not be able to object to the Settlement.

## OBJECTING TO THE SETTLEMENT

| **13.  How do I object to the Settlement?** |
| --- |

If you're a Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views. To object, you must file with the Court a letter or brief stating that you object to the Settlement in *In re Jiffy Lube Automotive Text Spam Litigation*, Case No. 3:11-MD-02261-JM-JMA, MDL No. 2261 and identify all your reasons for your objections (including citation and supporting evidence) and attach any materials you rely on for your objections.  Your letter or brief must also include your name, your address, your cellular telephone number that received the text message, a statement that you are a member of the Settlement Class, and your signature.  You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendants' Counsel listed below.

5

Class Counsel will file with the Court and post on this website its request for attorneys' fees two weeks prior to [objection / exclusion deadline].

If you want to appear and speak at the fairness hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Numbers 17-18), you must say so in your letter or brief.  If you hire a lawyer, your lawyer must file the objection with the Court's electronic filing system.  Otherwise, file the objection with the Court and mail a copy to these four different places postmarked no later than **[objection deadline].**

| Court | Class Counsel | Defendants' Counsel |
|---|---|---|
| The Honorable Jeffrey T. Miller c/o Clerk of the Court Edward J. Schwartz U.S. Courthouse 940 Front Street, Room 5190 San Diego, California 92101-8917 | Jay Edelson Edelson McGuire, LLC 350 North LaSalle St. Suite 1300 Chicago, IL 60654 | Glenn M. Kurtz White & Case LLP 1155 Avenue of the Americas New York, New York 10036

Brian D. Buckley Fenwick & West LLP 1191 Second Avenue, 10th Fl Seattle, Washington 98101 |

## 14.  What's the difference between objecting and excluding myself

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class.  Excluding yourself from the Class is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

## 15.  Do I have a lawyer in this case?

The Court has appointed Jay Edelson of Edelson McGuire, LLC and Michael J. McMorrow of Smith & McMorrow, P.C to serve as Lead Class Counsel and Douglas J. Campion of the Law Offices of Douglas J. Campion to serve as Liaison Class Counsel.  They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 16.  How will the lawyers be paid?

Subjection to Court approval, Heartland has agreed to pay Class Counsel up to 366,230 of the same Certificates being provided to the Settlement Class for attorneys' fees, costs, and expenses for investigating the facts, litigating the case, and negotiating the Settlement.  The Court may

6

award less than this amount. Under the Settlement Agreement, the value of any Certificates provided to Class Counsel will be deducted from the total value of the Certificates being paid to the Settlement Class.

Subject to Court approval, Heartland has also agreed to pay each of the six Class Representatives either up to 386 of the Certificates being issued to the Settlement Class or its cash equivalent for their services in helping to bring and settle this case. The Court may award the Class Representatives less than these amounts. Under the Settlement Agreement, the value of any Certificates provided to the Class Representatives will be deducted from the value of the Certificates being paid to the Settlement Class.

## THE COURT'S FAIRNESS HEARING

### 17. When and where will the Court decide whether to approve the Settlement?

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement at [●] on [●] in [●] on the [●] of the Edward J. Schwartz United States Courthouse at 940 Front Street in San Diego, California. The purpose of the hearing will be for the Court to determine whether the Settlement Agreement should be approved as fair, reasonable, adequate, and in the best interests of the Class; to consider the parties' agreement as to Class Counsel's Fee Award; and to consider the request for incentive awards to Class Representatives. At that hearing, the Court will hear any objections concerning the fairness of the Settlement that have been properly raised.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.HeartlandTextSettlement.com or call [●]. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Fairness Hearing, you will receive notice of any change in the date of such Fairness Hearing.

### 18. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come to this hearing and speak in Court about the fairness of the Settlement if you have asked for permission as described below. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but it's not required.

### 19. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *In re Jiffy Lube Automotive Text Spam Litigation*, Case No. 3:11-MD-02261-JM-JMA, MDL No. 2261." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your

7

objection and notice of intent to appear must be filed with the Court and postmarked no later than **[objection deadline]**, and be sent to the addresses listed in Question 13.

## GETTING MORE INFORMATION

| 20.  How do I get more information about the lawsuit and the settlement? |
| --- |

This Notice summarizes the Settlement.  More details are in the Settlement Agreement.  You may also see a complete copy of the Settlement Agreement by clicking **here**.  You are free to inspect the court files from [●] on weekdays at the office of the Clerk of Court, United States District Court for the Southern District of California, 940 Front Street, San Diego, California 92101. If you have additional questions, you can call Class Counsel toll-free at 1-866-354- 3015 or the Settlement Administrator at [●].  Before doing so, however, please read this full Notice carefully.  You may also find additional information elsewhere on the case website.

Please not call or direct any inquiries to the Court, to Heartland and/or Heartland Counsel, or to TextMarks or TextMarks Counsel.

By Order of the Court Dated: [●][●]

8

# Exhibit D

## Store Display Notice

**IF YOU WERE SENT A TEXT MESSAGE ADVERTISING A DISCOUNT ON A JIFFY LUBE OIL CHANGE YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION SETTLEMENT**

## COURT AUTHORIZED LEGAL NOTICE

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

A Settlement has been reached in a lawsuit about whether Jiffy Lube franchisee Heartland Automotive Services, Inc. and mobile ad company TextMarks, Inc. sent a text message offering a discount on a Jiffy Lube oil change in April 2011 without consent to do so in violation of the Telephone Consumer Protection Act and similar state laws.  Heartland and TextMarks are referred to as the "Defendants."

If you received this text message, your legal rights may be affected whether you act or don't act. Please read this Notice carefully. Visit **www.HeartlandTextSettlement.com** to read the full Notice and the Settlement Agreement.

### Who's Included

You are a member of the Settlement Class and included in the Settlement if you live in the United States and its Territories and you were sent a particular text message ad in April 2011 offering a discount on a Jiffy Lube oil change.

### What Do You Get?

If you are a member of the Settlement Class, you are entitled to one Certificate.  Each member of the Settlement Class for whom a U.S. mailing address could be determined was sent a Certificate.  If you think you are member of the Settlement Class but did not receive a Certificate in the mail, please visit www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [●].

The Certificate can only be used if the Court approves the Settlement and the Settlement becomes effective. If the Settlement becomes effective, the Certificate can be redeemed in one of two ways.  First, the Certificate may be used for goods and/or services at Heartland-owned Jiffy Lube stores for 18 months after the Settlement becomes effective. The Certificate lists some of the items you can get with it cost-free.  It can be used toward any higher priced goods /services too.  The value of the goods/services you can get will be set by the Court, but it is expected to be approximately $17.29.  Second, beginning 18 months after the Settlement is effective and ending 90 days after that, the Certificate may be redeemed for a cash payment that will be set by the Court but that is expected to be approximately $12.97.  The exact dates the Certificate can be used or exchanged for cash, and the value of the Certificates will be posted on www.HeartlandTextSettlement.com or available on the toll-free settlement hotline at [●].

The Settlement also requires Defendants to make sure people who wish to receive text messages properly consent.

### What are my Legal Rights and Options?

If you are a member of the Settlement Class, then unless you choose to exclude yourself, you will remain a member of the Settlement Class and, if the Court approves the Settlement, will be bound by the Settlement and all orders and judgments of the Court.

If you are a member of the Settlement Class and do not want to be bound by the Settlement Agreement, you can choose to exclude yourself from the Settlement Class.  If you exclude yourself, you will not be able to use the Certificate and you will not be able to object to the Settlement.  You will keep your right to sue Defendants and other related entities for claims relating to the text message.  To exclude yourself, you must send a written request for exclusion **postmarked no later than [date]** that includes (i) your name and address, (ii) the cellular telephone number on which the text message was allegedly received, (iii) your Certificate number (unless you did not

receive a Certificate), and (iv) a statement that you wish to be excluded from the Settlement Class to [Settlement Administrator Address].

If you are a member of the Settlement Class, you and/or your lawyer have the right to appear before the Court and/or object to the Settlement.  Objecting is telling the Court you don't like something about the Settlement.  You may object only if you stay in the Settlement Class. To object, you must file a written objection with the Court and send a copy to Class Counsel, Heartland Counsel, and TextMarks Counsel **postmarked no later than [Date]**.  Your objection must (i) include your name and address; (ii) state that you are a Settlement Class Member and provide the cellular telephone number that received the Text Message; (iii) include all arguments, citations, and evidence supporting the objection; and (iv) state whether you intend to appear at the Fairness Hearing (described below).

For complete information on your legal rights and options in this Settlement, including more detailed information on how to exclude yourself from the Settlement Class or to object to the Settlement, please visit www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [●].

### Who Represents Me?

The Court has appointed Jay Edelson of Edelson McGuire, LLC and Michael J. McMorrow of Smith & McMorrow, P.C to serve as Lead Class Counsel and Douglas J. Campion to serve as Liaison Class Counsel.  If you are a member of the Settlement Class and you want to be represented by your own lawyer in this case, you may hire one at your expense.

### When Will the Court Consider the Settlement?

The Court will hold a Fairness Hearing to determine the fairness of the Settlement at _:__ _.m on [date] at Edward J. Schwartz United States Courthouse, Room 5190, 940 Front Street, San Diego, CA 92101 before Judge Jeffrey T. Miller.  At that hearing, the Court will hear any objections concerning the fairness of the Settlement that have been properly raised.  The hearing may be postponed to a different date without notice.  You are not required to come to this hearing.

At the hearing to determine the fairness of the Settlement, Class Counsel will ask the Court to approve a Fee Award of up to 366,230 of the same Certificates given to the Class on account of attorneys' fees and expenses for investigating the facts, litigating the case, and negotiating the Settlement.  Class Counsel will also ask the Court to approve an incentive award for each Class Representative of up to 386 Certificates, or their cash equivalent, for their services in helping to bring and settle this case.  The Court may award Class Counsel and/or the Class Representatives less than these amounts, and the value of the Certificates will be deducted from the total cash or goods/services value of the Certificates being paid to the Settlement Class.

### How Do I Get More Information?

To read the Settlement Agreement or for more information about the Settlement, please visit www.HeartlandTextSettlement.com or call the toll-free settlement hotline at [●].

PLEASE DO NOT CONTACT THE COURT ABOUT THIS NOTICE. YOU MAY CALL CLASS COUNSEL AT [●] OR THE SETTLEMENT ADMINISTRATOR AT [●].

By Order of the Court Dated: [date]